JOHN V. LEITCH *v.* CHARLES D. GAITHER,
POLICE COMMISSIONER.

*Baltimore Police Department—Pay of Retired Officer.*

In determining the pay of a retired member of the police department under Baltimore City Charter, sec. 777, providing that, in case of an increase in the pay of officers of police, any officer who shall have been or shall be subsequently retired shall be entitled to a sum equal to one-half the remuneration of the active members of the department holding the same grade or rank, the base pay only of active members is to be considered, and not the additional compensation provided by Code Pub. Loc. Laws, art. 4, sec. 745, as re-enacted by Acts 1922, ch. 507, based on length of service.                    pp. 174-180

In the provision in section 577 of the Charter, that every retired officer shall receive the same remuneration as every other retired officer of like grade or rank, the words "grade or rank" refer to an office or position differing from other offices or positions in the same service in its duties, functions, and powers, and not to the amount of remuneration as determined by length of service, under Acts 1922, ch. 507, and consequently such remuneration determined by length of service could be considered in ascertaining the amount payable to a retired officer only by regarding the uniformity provision of the charter as impliedly repealed by the later act, and a repeal by implication is never favored.                                    pp. 178-180

That the Attorney General of the State ruled that retired members of the Baltimore City police department were not entitled to participate in the additional compensation provided by Code Pub. Loc. Laws, art. 4, sec. 745, as re-enacted by Acts 1922, ch. 507, based on length of service, and thereafter, by Acts 1924, ch. 263, the Legislature re-enacted that section without changing the provision as to additional compensation, supports the view that retired members are not so entitled, contemporaneous construction of a statute, especially by the Legislature, possessing great persuasive force.                                    pp. 176, 177

*Decided June 11th, 1926.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Mandamus proceeding by John V. Leitch against Charles D. Gaither, Police Commissioner for Baltimore City. From a judgment dismissing the petition, petitioner appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Isaac Lobe Straus,* for the appellant.

*Willis R. Jones, Assistant Attorney General,* and *Allan H. Fisher,* with whom were *Thomas H. Robinson, Attorney General,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The single question presented by this appeal is whether retired members of the Police Department of Baltimore City are entitled to receive, in addition to one half of the base pay received by active members of the department of the same grade or rank, one half of the additional compensation payable to such active members based upon the length of their service in the department. That question arises out of these facts: John V. Leitch, the appellant, now seventy-one years old, was appointed on the police force of Baltimore City on April 21st, 1881, and served as a patrolman on that force until March 21st, 1921, when he was retired with a clear record for faithful and efficient service. At the time of his retirement his salary was thirty dollars per week, and since the passage of chapter 266 of the Acts of 1900 he paid during his active service two per cent. of his salary to the special fund provided by that act for the payment of retired members of the Police Department of Baltimore City. Under the terms of section 777 of the Baltimore City Charter (1915 edition) he was entitled to receive upon his retirement "one-half of the remuneration of the active members of the Police Department holding the same rank or grade at the time of their retirement.

As has been stated, at the time of his retirement his salary was thirty dollars per week, and he was entitled to receive upon his retirement fifteen dollars per week. But by chapter 507 of the Acts of 1922, it was provided that in addition to that salary

"Each member of the Police Department, except the inspectors of police shall be entitled to additional compensation after serving five years to the amount of two and one-half per cent. (2½%) of the salary of his grade or position; after serving ten years five per cent. (5%) of the salary of his grade or position; after fifteen years seven and one-half per cent (7½%) of the salary of his grade or position; after twenty years ten per cent. (10%) of the salary of his grade or position; after twenty-five years twelve and one-

> half per cent. (12½%) of the salary of his grade or
> position; after thirty years fifteen per cent. (15%)
> of the salary of his grade or position."

It further provided that the additional compensation for
length of service should not become effective until January
1st, 1923. After it became effective application was made
on behalf of retired members of the department for one half
of the additional compensation allowed for length of service
to active members of like grade or rank with the several appli-
cants who had served respectively as long as they had. The
Police Department thereupon referred the question to the
Attorney General of the State who, on November 4th, 1922,
ruled that salaries paid to retired members of the force were
to be computed upon the base pay of active members of the
force, and not upon the salary plus the additional allowance
for length of service. That ruling was accepted and followed
by the department, and was apparently not questioned until
the appellant in this case, on October 2nd, 1925, filed in the
Superior Court of Baltimore City a petition against Charles
D. Gaither, Police Commissioner of Baltimore City, praying
that a writ of mandamus issue requiring him to pay to the
petitioner

> "an amount equivalent to one-half of the grade salary
> received by patrolmen as of the date of January 1,
> 1923, and in addition thereto, an allowance and pay-
> ment of the additional compensation, after a service of
> thirty years, to the amount of fifteen per cent. of the
> said salary of his grade or position of patrolman as
> of the said date, January 1, 1923, accounting from the
> first day of January, 1923, to the present time, and con-
> tinuously thereafter during the lifetime of your peti-
> tioner."

The respondent answered the petition, and the petitioner
demurred to the answer. The court overruled the demurrer
and dismissed the petition and from that order the petitioner
has appealed.

From this statement of the case it appears that the only question presented is one of statutory construction, and involves an examination of the several statutes fixing the compensation of active and retired members of the Police Department of Baltimore City.

The first statute to which we need refer is chapter 459 of the Acts of 1886, which, after defining the special fund referred to above, provided that

"The said Board of Police Commissioners are hereby empowered, whenever in their opinion the efficiency of the service may require it, to retire any officer of police, policeman or detective and pay him, in monthly instalments out of the said fund, for life, a sum of money not to exceed one-third of the amount of money monthly paid to him as such officer of police, policeman or detective at the time of his said retirement."

Chapter 266 of the Acts of 1900 in part provided that:

"A sum of money equal to but not greater than two per centum of the semi-monthly pay, salary or compensation of each member of the police force, entitled to participate in the special fund, which sum shall be deducted every pay day by the treasurer of the Board of Police Commissioners from their °pay, salary or compensation of each and every member of the police force, and the said treasurer of said board is hereby authorized, empowered and directed to deduct the said sum as aforesaid, and forthwith to pay the same to the treasurer of the trustees of the special fund; provided, however, that it shall be optional with any member of said police force to contribute the said two per centum of his salary as above provided, and participate in the benefits of the special fund; and provided further, that no member of said force shall participate in said special fund unless he contributes to said fund as aforesaid."

Chapter 567 of the Acts of 1912, which repealed and reenacted section 777 of chapter 123 of the Acts of 1898,

among other provisions dealing with the pay of retired members of the Police Department of Baltimore City, contains the following:

> "In addition to the sums of money now authorized by law to be paid out of the fund as above constituted and designated, the said Board of Police Commissioners are empowered whenever, in their opinion, the efficiency of the service may require it, to retire any officer of police, policeman, detective, clerk or turnkey appointed by them; and the said Board of Police Commissioners shall pay to such officers of police, policeman, detective, clerk or turnkey so retired, in monthly instalments, out of said fund, for life, a sum · of money equal to one-half the amount of money currently paid monthly to an officer of police, policeman, detective, clerk or turnkey, as provided by law. * * * In the event at any time of an increase in the pay of officers of police, policeman, detective, clerk or turnkey, every officer of police, policeman, detective, clerk or turnkey who shall have been or shall subsequently be retired by the said Board of Police Commissioners shall be entitled to and the said Board of Police Commissioners shall pay to him in the manner and at and for the length of time provided in this section for the pay of the members of the police force who shall be retired or shall have been retired, a sum equal to one-half of the remuneration of the active members of the police department holding the same rank or grade at the time of their retirement, to the end and effect that every retired officer of police, policeman, etc., shall receive the same remuneration as every other officer of police, policeman, etc., of like grade or rank, and no less. * * * That this act shall be construed to mean that at all times hereafter the remuneration of every retired member of the police force of Baltimore City shall be one-half the remuneration or pay of those members of the police force in active service occupying a grade or rank similar to the grade or rank occupied by the retired member at the time of his retirement, and that whenever the remuneration for any of

the grades or ranks of the active members of the police department are increased, the remuneration of those retired members of the police department who held the same grade or rank at the time of their retirement that the increased pay applies to, then in that event the remuneration of the retired member of that grade or rank shall be one-half of such remuneration as the increase provides for, and no less."

Chapter 507 of the Acts of 1922, in amending section 745, article 4, P. L. L. of Md., after fixing the salaries of members of the Police Department in active service, made the further provision referred to above.

It is apparent from an examination of these statutes that the question before us necessarily turns upon the meaning to be given the following expressions found in chapter 567 of the Acts of 1912, codified as sections 777 and 777-1 of the Baltimore City Charter, to wit:

"In the event at any time of an increase in the pay of officers of police * * * every officer of police who shall have been or shall be subsequently retired * * * shall be entitled to * * * a sum equal to one-half of the remuneration of the active members of the Police Department holding the same grade or rank at the time of their retirement, to the end and effect that every retired officer * * * shall receive the same remuneration as every other retired officer * * * of like grade and no less" (section 777), and "this act shall be construed to mean that * * * whenever the remuneration for the grades or ranks of the active members of the Police Department are increased, the remuneration of those retired members of the Police Department who held the same grade or rank at the time of their retirement that the increased pay applies to, then, in that event the remuneration of the retired member of that grade or rank shall be one-half of such remuneration as the increase provides for and no less" (section 777-1).

And also upon the meaning of that part of section 745 of article 4, C. P. L. L. of Md., which provides that

"In addition to the salaries herein provided for, each member of the Police Department * *·* shall be entitled to additional compensation after serving five years to the amount of two and one-half per cent. of the salary of his grade or position.," etc. ·

That there is some ambiguity and an apparent conflict in these several provisions is obvious. For by the Act of 1912, every retired member of the police force is entitled to one-half the remuneration of the active members of the force at the time of their retirement, and in the event of an increase in the pay of active members of the force the retired members are entitled to receive one-half of the increased pay allowed to active members of the same grade or rank, but by the same statute it is provided that every retired officer shall receive the same pay that every other retired officer of like rank or grade shall receive and no less. At the time the Act of 1912 was adopted these provisions were harmonious and complementary, because at that time the pay of officers of police of the same grade or rank was uniform, and the act was based upon that fact. But with the adoption of the Act of 1922, that condition was changed, and the pay of members of the police department of the same grade or rank was no longer uniform but varied with the length of their service, so that while a patrolman who had served less than five years would receive under the law thirty dollars a week, one who had served thirty years would receive thirty-four dollars and fifty cents a week. If therefore retired members of the force were entitled to receive one-half of the additional remuneration allowed for length of service in addition to one-half of the base pay allotted to the several grades or ranks, it became impossible to gratify that provision of the Act of 1912 which required that every retired officer of police should receive the "same remuneration" as every other retired officer of the same grade or rank and no less, unless length of service itself

automatically by virtue of the statute creates different grades or ranks. This conclusion seems to be self evident and inevitable, because if one retired member of the force of the rank or grade of patrolman who had retired after twenty years of service receives one-half of the base pay plus one-half the allowance for length of service he would receive sixteen dollars and fifty cents a week, while another of the same grade or rank who had served thirty years would receive seventeen dollars and twenty-five cents a week, and both would not receive the same remuneration but one would receive less than the other. If that conflict is irreconcilable, the latest statute controls, and the question arises of whether the Legislature intended by the Act of 1922 to repeal so much of the Act of 1912 as contained the uniformity provision to which we have referred. *Lewis' Sutherland Stat. Const.,* par. 247. But such an intention will not be presumed unless it is unavoidable. *Garitee v. Baltimore,* 53 Md. 422. In the case last cited this Court, in referring to repeal by implication, very precisely and very definitely states that rule in the following form: "Repeals by mere implication are never favored by the courts; the general presumption being against an intention on the part of the Legislature to alter or modify the pre-existing law beyond the express terms or immediate scope of the statute relied on as having the effect of a repeal. If the subsequent act can be made, by any reasonable construction or intendment, to stand with the previous legislation, that construction will always be adopted. This is a canon of construction which is as well established as any principle of the law."

In order to reach a construction which will avoid the repeal by implication of the uniformity provision of the Act of 1912, we must hold either that the word "remuneration" as used in the Act of 1912, referred exclusively to the base pay of members of the police force, or that the words "grade or rank" as used in that statute were designed to embrace grades or ranks incident to and arising from length of service as well as grades or ranks expressly created,

named, and defined by statute with separate and distinct duties and incidents and different as to each grade, for in either of those events but in no other case can the statutes be harmonized. Either construction involves some difficulty, but in endeavoring to reach the legislative intent we are not confined entirely to the language of the statutes. As has been pointed out above, the additional compensation provided by chapter 507 of the Acts of 1922 did not take effect until January 1st, 1923. And on November 4th, 1922, Hon. Alexander Armstrong, then Attorney General of Maryland, ruled that retired members of the Police Department of Baltimore City were not entitled to participate in the additional compensation for length of service, and his ruling was accepted and has since been followed, and the Legislature, knowing that, repealed and re-enacted section 745 of article 4, P. L. L. of Md., by chapter 263 of the Acts of 1924, without changing at all that part of it which related to the extra compensation based on length of service, and to that extent at least by implication the Legislature acquiesced in the construction placed upon the act by the Attorney General as a correct expression of its intention. Contemporaneous construction, especially by the Legislature, whilst not necessarily conclusive or controlling, may nevertheless possess great persuasive force in determining the true meaning and intent of obscure or ambiguous language in legislative acts. It is said in *Lewis' Sutherland on Statutory Construction,* par. 472: "The aid of contemporaneous construction is invoked where the language of a statute is of doubtful import and cannot be made plain by the help of any other part of the same statute, nor by the assistance of any act *in pari materia* which may be read with it, nor of the course of the common law up to the time of its enactment. Under such circumstances the court may consider what was the construction put upon the act when it first came into operation. Where this has been given by enactment it is conclusive. A contemporaneous construction is that which it received soon after its enactment. This, after

the lapse of time, without change of that construction by legislation or judicial decision, has been declared to be generally the best construction.   It gives the sense of the community as to the terms made use of by the legislature. If there is ambiguity in the language, the understanding of the application of it when the statute first goes into operation, sanctioned by long acquiescence on the part of the Legislature and judicial tribunals, is the strongest evidence that it has been rightly explained in practice.   A construction under such circumstances becomes established law." And this court in a recent case has announced the same rule. *Burroughs Adding Machine Co. v. State,* 146 Md. 192.

The appellant, however, contends that there is no ambiguity in the statute, but that the word "remuneration" as used in sections 777 and 777-1 of the Baltimore City Charter is broad enough to cover, and was intended to cover, every payment of every kind made to members of the police force as compensation for their services, and that since the additional pay for length of service is as much compensation for services rendered as is their base pay, that it is included within the broad and comprehensive term "remuneration."   And that since those sections entitle the retired members of the force to receive one-half the remuneration currently paid to active members of like grade, including all increases made since their retirement, and that since the increase in the pay of active members of the force for length of service provided by the Act of 1922 is a part of the total remuneration paid them for their services, retired members of the force of like grade and who have served for a like period are entitled to one half of that entire remuneration.   There is obviously great force and substantial merit in that contention, and if the word "remuneration" were not qualified and limited by other expressions in the statute it would necessarily be controlling and conclusive, for that would be the meaning naturally and ordinarily given to the word "remuneration." But the difficulty lies in the fact that, if it is given that meaning, we must annul or disregard those provisions of the

statute which expressly provide "that every retired officer of police * * * shall receive the same remuneration as every other retired officer of police * * * of like grade or rank and no less." It is contended that: "The purpose of the clause is that the retired officer should not receive less with respect to any subsequent increase of remuneration applicable to his rank than any other retired officer receives with respect to such subsequent increase, however made and whatever its conditions. * * * The language is: "to the end and effect that every retired officer of police, policeman, etc., shall receive the same remuneration as every other retired officer of police, policeman, etc., of like grade or rank, and no less. This last expression taken with the whole import and design of the two sections secures to every retired officer full and undiminishable participation at all times in any and every increase in the remuneration applicable to the rank he held when retired to the extent of one-half of any and every such applicable increase." But we do not so read the statute, for in our opinion the provision was intended to qualify both sections. And that must have been the legislative intent because, at the time those sections were enacted, the law contained no provision for additional pay for length of service, and if when such additional pay was provided for, the Legislature had intended it to fall within the reach of those two sections, it would have so stated. But as has been indicated, so far from doing that, it re-enacted without change that part of section 745 which provides additional compensation for length of service, after the Attorney General, who under the Constitution is its legal adviser, had ruled that retired members of the police force were not entitled to participate in the increased pay allowed by the Act of 1922 for length of service. When therefore the statute allowed to retired members of the force one half the remuneration paid to active members of the force of like grade or rank, it can only have meant one-half of the base pay of such members.

The only remaining question then is, Did those provisions of the statute which provided for progressive increases in the salary of active members of the force based upon the length of

their service create different grades or ranks corresponding to each increase? Or stated in another way, is a patrolman who has served thirty years of the same grade as one who has served five years, or is he of a different grade? Section 745 of the Charter of Baltimore City uses the word "salary" in fixing the compensation to be paid to active members of the police force according to their several grades or ranks, and the words "in addition to the salaries herein provided for," in fixing the allowance for length of service. Section 777 provides for the payment to retired members of the police force of one-half the remuneration paid to active members of the "same grade or rank." The learned and able judge who decided the case below held that the "grade or rank" referred to in the statute meant the positions occupied by the several members of the police department with reference to its management and operation and the discharge of the functions required of it by law, and had no relation to the length of time which they had respectively served in the department, and that the "salary" fixed by the statute as the base pay of active members of the force according to their several grades was the basis for computing the remuneration payable to retired members, and that the compensation to be paid for length of service, being in addition to the base pay, formed no part of it and could not be considered in computing the amount to be paid to retired members of the force. And after a careful consideration of the question we have been led to accept that view. Speaking literally, it may be that the word "grade" can be used to designate and differentiate the positions occupied by officers of the same rank who have served for different periods when the difference is made the basis for additional compensation or privilege, but it was obviously not used in that sense by the Legislature. Because so far as we have been able to discover, the words "grade or rank" as used in the Baltimore City Charter and in the various acts of assembly dealing with the Police Department of Baltimore are invariably used to describe a particular position or office having inci-

dents and duties distinguishing it from other positions in the same service. A number of instances in which the words have been so used are collected in the opinion of the judge who decided the case below, and our attention has been called to no case in which they have been given a different meaning in any legislation connected with that subject matter.

When, therefore, the Legislature, in the Act of 1912, used the words "grade or rank," it did not intend to describe differences or distinctions in rank arising from length of service, but used those two words indifferently and indiscriminately, as always meaning the same thing, to wit, an office or position differing from other offices or positions in the same service in its duties, functions, or powers. Assuming as we do the truth of that premise, it follows that, if the remuneration to be allowed to retired members of the department is to be based upon the additional compensation allowed for length of service, that retired officers of the same grade or rank will receive different amounts, that some will receive less than others, and that the uniformity provisions of the statute must be regarded as repealed by the Act of 1922, because the two cannot stand together. But while there is much to be said in favor of that construction, nevertheless, when we consider that the contemporaneous executive construction, as well as the acquiescence of the Legislature therein, are adverse to it, and that the obvious and essential purpose of the Act of 1922 was to induce men to remain in the service of the police department by offering additional compensation proportioned to the length of such service and not to increase the pension paid to them upon their retirement, we are constrained to accept the view that there was no implied repeal of the uniformity provision of the Act of 1912, and that the increase allowed for length of service was intended solely as a bonus to induce men to remain in the service, which would cease entirely and automatically upon their retirement.

It may be said that an increase in the pension to be paid to retired members of the force would also be an inducement to

men to remain in the service, but such an increase, based upon length of service, was not we think in the contemplation of the Legislature at the time the Act of 1912 was adopted, and if it had intended that the increases allowed by the Act of 1922 should inure to the benefit of retired members of the force, and would thereby destroy and annul the uniformity provision of the Act of 1912, it would have said so in clear and direct terms.

Holding these views, we will affirm the order from which this appeal was taken.

*Order affirmed, with costs.*