**SILVER et al. v. LANSBURGH & BRO. et al.**

No. 58801.

District Court of the United States for the District of Columbia.

May 8, 1939.

Ernest A. Swingle (of Swingle and Swingle), of Washington, D. C., for plaintiffs.

R. B. H. Lyon (of Lyon and Lyon), of Washington, D. C. (Robert Rosenberg, of Harrisburg, Pa., of counsel), for defendants.

LUHRING, Justice.

The plaintiffs, by their amended bill of complaint filed December 16th, 1936, seek an injunction to restrain the defendant corporations from directly or indirectly engaging in the practice of optometry in the District of Columbia.

The claim for relief is based upon two grounds, namely: (a) That optometry is a learned profession, the very nature of which prohibits the practitioner thereof from any affiliation or connection with a corporation or non-optometrist; and (b) that the Optometry Law of May 28, 1924, specifically prohibits the employment in this jurisdiction of duly registered and licensed optometrists by a corporation or non-optometrist.

The plaintiffs are optometrists duly registered and licensed as such by the District of Columbia under the provisions of an Act of Congress, approved May 28, 1924, entitled "An Act to regulate the practice of Optometry in the District of Columbia," Tit. 20, § 261 et seq., Code D.C. (1929), and are entitled to practice the profession of Optometry in said District of Columbia, and they are now engaged in the practice of their said profession of Optometry in said District. They bring this suit in their own right and on behalf of all duly registered and licensed optometrists similarly situated in the District of Columbia.

The defendant, Lansburgh and Bro., is a corporation organized under the laws of the District of Columbia, with authority to conduct a general mercantile business. For some years it has operated and now operates a department store at Number 420 Seventh Street, N. W., in the City of Washington, D. C.

The defendant, Buhl Optical Company, is a corporation organized under the laws of the District of Columbia and authorized to manage, conduct, operate and own optical and optometrical stores, either managed, conducted, operated and/or owned by itself or others jointly, and to hire, engage, use and employ licensed optometrists to examine the eyes of patrons and to furnish and fit eyeglass requirements for the improvement or correction of visional defects or deficiencies of the eyes of such patrons.

The defendant, Buhl Optical Company, a Delaware corporation, although made a party, is not before the court.

On the 24th day of July, 1935, the defendant, Lansburgh and Bro., entered into a contract with its codefendant, the Buhl Optical Company, whereby Lansburgh leased to Buhl for a period of three years from September 1st, 1935, the exclusive privilege of conducting an optical department "wherein there will take place the examination of the eyes, the sale of eye glasses and other usual optical goods on the main floor of the store," in a space or location to be designated by Lansburgh.

The Buhl Optical Company by this contract agrees to hire and pay the wages of all employees necessary to the proper conduct of its business, and Lansburgh and Bro. agreed to pay each week to such employees the wages due them as directed by Buhl Optical Company.

The contract further provides that all moneys receivable from the sale of merchandise in the optical department shall be paid to and collected by Lansburgh, who shall retain as rental a sum equal to twenty per cent of the entire gross business done by Buhl, credit and cash, less returns and refunds, for each and every month of occupancy. Buhl guarantees to Lansburgh a minimum return as rental the sum of $4500 each fiscal year during the term of the lease, based on a minimum gross volume of business of $22,500 for each such fiscal year. Lansburgh and Bro. guarantees payment of all charge and credit sales when approved and passed by it. Buhl agrees to spend for advertising the optical department a minimum sum equivalent to five per cent of the gross volume of business.

Provision is made for an accounting on or about the 15th of each month for the preceding month, and Lansburgh agrees to pay over to Buhl all moneys collected from the optical business, less the rental, wages of employees and other authorized expense, including freight, advertising and advances on vouchers, and in the event moneys advanced in any one month exceed the rental charges for that month, it is agreed that the difference shall be paid forthwith by Buhl.

684

The contract further provides:

"The Lessee (Buhl) agrees to abide by all the store rules and regulations, and the Lessor (Lansburgh) shall be the ultimate arbiter in all disputes or adjustments which may arise in the course of the business with customers or between employes. The Lessee shall discharge any employee the Lessor shall request for the welfare of the store."

"It is agreed between the parties that the business of the Lessee with reference to advertising and sale of goods, shall be conducted to all outward appearances as part of the business of the Lessor under the name of Lansburgh's."

" * * * No advertising of any nature shall be used by the Lessee unless submitted to and approved by the Lessor."

"The Lessee agrees that it will carry in stock merchandise which shall in character be in keeping with merchandise offered for sale throughout the store. The department of the Lessee shall be ready for operation during the business hours of the Lessor, and the Lessee agrees to mark the selling price of its goods in plain figures; and said prices shall meet legitimate competition in the District of Columbia."

Pursuant to the leasing agreement the defendant, Lansburgh and Bro., designated a space or location on the main floor of its store to be occupied by Buhl. This space was properly equipped with the necessary facilities for the examination of the eyes and the sale of eye glasses and the usual optical goods. It was placed in charge of an optometrist duly licensed and registered under the optometry law of the District of Columbia. The examination rooms are of modern design and afford the necessary privacy. The optometrist is furnished with all mechanical devices and instruments used by optometrists generally in determining visual defects and in the adaption of lenses for the aid and relief thereof.

The leasing contract was otherwise complied with by the parties. Lansburgh received and collected all receipts from the sale of merchandise; paid the wages of the employees hired by Buhl, and accounting was duly had between the parties. Advertisement of the optical department was prepared by Buhl and approved by Lansburgh, and the business with reference to such advertising and sale of goods was conducted to all outward appearances as part of the business of Lansburgh. The salary of the optometrist was paid by Buhl and no charge was made for the examination of the eyes.

The optometrists employed by Buhl, and who are in charge at the Lansburgh store, have full and exclusive control, without direction from the defendants or any of their officers or employees, in their practice of optometry. The defendants do not direct them in the manner they pursue their practice nor in the kinds of prescriptions given. These matters are left entirely to the judgment of the optometrists. They and they alone examine the eyes of the patients, and adapt the lenses for the correction of such defects.

In the examination of the eyes for the purpose of determining visual defects and in the adaption of lenses for the aid and relief thereof, the optometrist uses various devices and instruments. Among such instruments are the Retinoscope, Ophthalmoscope and Ophthalmometer. Test lens sets consisting of spheres, cylinders and prisms are used in connection with a test lens frame, or similar device to test the patient's ability to read letters and numerals from a test card or chart. It is here and finally that the patient, himself, fits his eyes by a system of trial and error aided by the optometrist.

Optometry is not a learned profession, comparable with law, medicine and theology, notwithstanding standards of education are prescribed by the statute and rules of the Board. It certainly has nothing in common with law or theology and, until recently, it was never claimed to be a part of medicine. E. E. Arrington in his History of Optometry (1929) says: "1. Ocular refraction is not, and never has been, a part of medicine, either by inheritance, basic principles, development or practice. It is an applied arm of optical science, resting upon the work and discoveries of physicists and opticians through the ages, down to modern times. It does not treat the eye, whether in health or disease, but adapts the light waves which enter the eye, in accordance with optical principles, so as to produce focused and single vision with the least abnormal exertion on the part of the eye. And, finally, its distinction from and independence of medicine have been affirmed by supreme court decisions in every case in which the question has been brought up for adjudication."

The optometrist licensed to practice in the District of Columbia is expressly prohibited from using any title indicating that he is engaged in the practice of medicine or the treatment of the eye. Physicians and surgeons are exempted from the provisions of the Act, and may practice optometry without being licensed thereunder. §§ 279 and 280, Tit. 20, D.C.Code (1929).

Furthermore, in the District of Columbia many of the licensed optometrists advertise in the press and in the telephone directory. They maintain store fronts with attractively decorated display windows. Electric signs are not uncommon.

The facts in evidence justify the conclusion of the Court of Appeals of Maryland in the case of Dvorine v. Castelberg Corp., 170 Md. 661, 669, 185 A. 562, 566, and the court here finds that optometry "is essentially a mechanical art which requires skill, manual dexterity, and a knowledge of the use and application of certain mechanical instruments and appliances designed to measure and record the errors and deviations from the normal which may be found in the human eye, rather than the knowledge and learning appropriate to professions or callings which deal with causes and conduct rather than with conditions and effects. It is in its nature empirical rather than learned."

The court further finds that the defendants, Lansburgh and Bro. and Buhl Optical Company, are not engaged in the practice of optometry in the District of Columbia contrary to the provisions of the Act entitled "An Act to regulate the practice of Optometry in the District of Columbia," approved May 28th, 1924.

There is sharp conflict of authority. The cases are reviewed in Dvorine v. Castelberg Corp., supra; State ex rel. Attorney General v. Gus Blass Co., 193 Ark. 1159, 105 S.W.2d 853, and State v. Gate City Optical Co. et al., 339 Mo. 427, 97 S. W.2d 89. See, also, Georgia Board of Optometry v. Friedman's Jewelers, 183 Ga. 669, 189 S.E. 238.

The primary purpose of the Code Tit. 20, § 261 et seq., is the protection of public health and not to further personal interests of optometrists by protecting the calling itself.

The amended complaint must be dismissed, and it is so ordered.