# MARYLAND REPORTS.

## APRIL TERM, A. D., 1890.

### MAX BALLOCK vs. STATE OF MARYLAND.

*Lottery—Foreign government Bond—Treaty stipulation—
Constitutional provision.*

Under an indictment for a violation of the lottery laws of the
State which prohibit the selling of anything that on the happen-
ing of any event or contingency in the nature of a lottery, en-
titles the purchaser to money or property, evidence that the
defendant sold an Austrian Government bond, under which the
purchaser would receive, in any event, the face value thereof,
with interest up to the drawing, and a premium prize of twenty
per cent. with the chance to draw one of the highest prizes,
should the number drawn from a wheel of fortune containing
the prize numbers, be in his favor, is admissible, and will sup-
port a conviction.

When the bonds of a foreign government are coupled with con-
ditions and stipulations that change their character from an
-obligation for the payment of a certain sum of money, to a
species of lottery ticket, condemned by the police regulations of
the State, the prohibition of their sale does not violate treaty
stipulation or constitutional provision.

APPEAL from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON,
IRVING, FOWLER, MCSHERRY, and BRISCOE, J.

1                          v. 73.

*Peter J. Campbell,* and *William S. Bryan, Jr.,* for the appellant.

*William Pinkney Whyte, Attorney-General,* for the appellee.

IRVING, J., delivered the opinion of the Court.

Section 172 of Art. 27 of the Code of Public General Laws of this State is in these words: "No person shall draw any lottery or sell any lottery ticket in this State; nor shall any person sell what are called policies, certificates, or anything by which the vendor or other person promises or guarantees that any particular number, character, ticket or certificate shall, in any event, or on the happening of any contingency, entitle the purchaser or holder to receive money, property, or evidences of debt." Section 173 of the same Article provides that "all devices and contrivances designed to evade the provisions of the preceding section shall be deemed offences against it." Section 176 makes provision for punishing any one who may keep "a house, office or other place for the purpose of selling or bartering any lottery ticket, policy, certificate, or any other thing by which the vendor or other person promises or guarantees that any particular number, character, ticket or certificate, shall in any event, or on the happening of any contingency in the nature of a lottery entitle the purchaser or holder to receive money, property, or evidence of debt." The next section punishes the owner of any house for permitting it to be used as a place for selling lottery tickets, or any of the things in the nature thereof mentioned in the preceding section.

The appellant was indicted in the Criminal Court of Baltimore for violating these lottery laws of the State. The first count charges the appellant with selling to Bernard C. Winckler "a lottery ticket." The second count charges the sale of "a lottery policy." The third

charges the sale of "a lottery certificate." The fourth count charges him with selling "a certain *thing* by which the vendor thereof promised that a particular number should, on the happening of a contingency in the nature of a lottery, entitle the holder of said thing to receive money contrary to the form of the Act of Assembly in such case made and provided," &c. Other counts charged him with keeping "a room," "a place," "a house," for the sale of such things, and for permitting such room, place or house to be kept for such purpose.

No question arises upon the form or sufficiency of the indictment. The appeal presents but a single question, whether certain evidence was properly admitted by the trial Court in support of any of these charges against the appellant.

The case was tried before the Court without the aid of a jury, and the only exception in the case is to the admission of the testimony set out in the exception, which was objected to *en masse.* The witness testified that the appellant sold to him for the sum of ninety-five dollars an instrument called an "Austrian Government Bond," which provides that the Austrian Government will pay to its bearer the principal sum of one hundred gulden (Austrian value) in accordance with its condition set forth on the back of the instrument, together with one-fifth part of any such sum of money as may be allotted to the prize number of the bond, and which sum must amount to at least one hundred and twenty gulden, Austrian value, with interest semi-annually on the bond until the same is drawn, at the rate of five per cent. *per annum;* and by the rules and regulations concerning the drawing and redemption of these bonds, endorsed on the instrument in question, it is, in substance, provided that the bonds issued on the loan of March 15th, 1860, are divided into twenty thousand equal series, and each series to the amount of ten thousand gulden, is sub-

divided into twenty numbers, marked from 1 to 20. Each of the bonds contains on its left heading the number of the series, and on its right its prize number; the drawing of the series numbers, it is provided, shall take place on the first day of February and August in each year; that of the prize number on the first day of May and the second day of November in each year. For the purpose of the drawing of the series, twenty thousand numbers are deposited in a wheel, from which the fixed number of series to be redeemed for the half year is drawn.

The series numbers so drawn are then deposited in a second wheel to await the next drawing of prize numbers. On the day when the drawing of prize numbers takes place twenty numbers from 1 to 20 are deposited in a separate wheel, whereupon the wheel wherein the series numbers are deposited is unlocked, and one number drawn therefrom. This number designates the series of the bond which is entitled to the highest prize. Thereupon a number from the wheel containing the twenty prize numbers is to be drawn, and this number designates the bond which is entitled to the highest prize. In this manner the drawings are to be continued until all the prizes above six hundred gulden are exhausted. All other bonds receive the principal, and interest, and twenty *per cent.* in addition.

At every drawing the following prizes are drawn: First one of three hundred thousand gulden, one of fifty thousand gulden, one of twenty-five thousand gulden, two of ten thousand gulden, fifteen of five thousand gulden, and thirty of one thousand gulden. Drawn bonds are to be paid three months after the drawing. The holder of a bond receives in any event the face value thereof with interest at five per cent. up to the drawing and a premium prize of twenty per cent. He has also the chance to draw one of the higher prizes. The chance varied

Ballock *vs.* State.

from sixty thousand to two hundred gulden. This statement of the offer is in the bill of exception, and the translated bond furnished the Court does not materially vary the statement.

Our statute allows the sale of nothing which, on the happening of a contingency "in the nature of a lottery," brings pecuniary benefit, which would not be enjoyed but for the chance falling to the holder. Courts are required by section 184 to construe the provisions liberally in order to reach and suppress the evil; and they are required to hold "*anything*" to be a lottery ticket which, on the happening of such event or contingency in the nature of a lottery, entitles the holder to money or property. In *Smith vs. State*, 68 *Md.*, 170, this Court decided that it was the duty of the Courts to hold any device whereby money or any other thing is to be paid or delivered on the happening of any event or contingency in the nature of a lottery to be a lottery ticket. The same view is reiterated in *Boyland vs. State*, 69 *Md.*, 512. Every possible phase of such transaction seems to have been provided against in our statute. Section 183 of Article 27 of the Code provides that these sections relating to lotteries shall apply to all lotteries, "whether authorized by any other State, district or territory, or by any *foreign country.*" This provision effectually disposes of the contention that the word person in the statute does not include a sovereign State or country. The statute provides that it shall.

Webster defines a lottery to be "a distribution of prizes by lot or chance," and Worcester says "it is a distribution of prizes and blanks by· chance," "a game in which small sums are ventured for the chance of obtaining a larger value." It has been strenuously and ably contended that because there are no blanks in the wheel, but something of value must always come to the holder of any particular number it is no lottery ticket.

Such does not seem to be the legal acceptation, and under our law it certainly cannot be.    In *Hull vs. Ruggles*, 56 *N. Y.*, 424, it is said, "where pecuniary consideration is paid and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to receive for it, that is a lottery."    Something very inconsiderable could be substituted for the blank, if the defendant's argument was sound, and this would entirely destroy its character as a lottery.    Its vicious character would be entirely purged by such substitution.    Our statute certainly prohibits such evasion, and prevents a ruling which would sanction such evasion or make it possible. The law of this State for the purpose of preventing the mischiefs lotteries are thought to produce, makes anything partaking of the nature of a lottery a lottery.    It has been vigorously argued that, because the money ventured must all come back, with interest, so that there can be no final loss, it cannot be a lottery, even within the meaning of our law.    At some uncertain period determined by the revolution of a wheel of fortune the purchaser of a bond does get his money repaid; but we do not think this deprives the thing of its evil tendency, or robs it of its lottery semblance and features.    The inducement for investing in such bonds is offered of getting some "*bonus*," *large or small*, in the future, *soon or late*, according to the chances of the wheel's disclosures. The investment may run one year or it may run thirty years, according to the decision of the wheel.    It cannot be said this is not a species of gambling, and that it does not tend in any degree to promote a gambling spirit and a love of making gain through the chance of dice, cards, wheel, or other method of settling a contingency. It certainly cannot be said that it is not in "*the nature* of a lottery*," and that it has no tendency to create desire for other and more pernicious modes of gaming.

Our statute does not justify a Court, expressly directed to so construe the law as to prevent every possible evasion, whether designedly or accidentally adopted, in deciding a thing is not a lottery, simply because there can be no loss, when there may be very large contingent gains, or because it lacks some element of a lottery according to some particular dictionary's definition of one, when it has all the other elements, with all the pernicious tendencies, which the State is seeking to prevent. Striking at the root of the evil, and to prevent all its possible mischiefs, the statute lays down a different rule from that applied to the construction of other criminal statutes, which is a rule of *strict construction.* Instead of that rule the law says this statute is to be construed *liberally* in order to prevent the introduction and use of *anything* in the *nature of a lottery,* for the making of money or securing property. The case of *Kohn vs. Koehler,* 96 *N. Y.,* 362, was a civil suit under the New York statute to recover double the amount paid by plaintiff for a bond exactly like the one here involved, and does decide that it did not fall under the condemnation of the New York statute, and the case of *Ex parte Shobert,* 70 *California,* 632, follows it in construing the California statute. We have examined the statutes of those States and do not think those cases can or ought to control us in the construction of our statute, which is so essentially different from both the New York and the California law. Even upon the New York statute, we think the reasoning of Judge DAVIS in the Supreme Court in *Kohn vs. Koehler,* 21 *Hun,* 466–70, more convincing and sounder than that of the appellate Court, which reversed the Supreme Court's decision in the case, and we approve the reasoning of the Supreme Court.

Our State has such a well-defined policy respecting lotteries, and regards them or anything in the nature of them so detrimental to public and private morals, and

Rallock *vs.* State.

so much in the way of the certain and substantial thrift of its citizens, that it has forbidden the dealing in *anything* partaking of their nature. It has expressly included, as we have already noted, anything of that nature authorized by other States and *foreign governments.* Its dignity and laws, therefore, ought to be upheld, unless the law be plainly violative of constitutional obligation or treaty stipulation. We cannot see that our law is so. It is true that Austrian Goverment bonds are vendible, and ought to be treated as other articles of commerce, as a rule; but when those bonds are coupled with conditions and stipulations which change their character from simple Government bonds for the payment of a certain sum of money to a species of lottery ticket which falls under the condemnation of our statutes, it must be classed as its conditions characterize it, and then it is not vendible under our law, and it does not violate constitutional provision or treaty stipulation to so hold. All the decisions of the Supreme Court make a saving in favor of police regulations as within constitutional authority. Such bonds as this should be no more protected in their sale than diseased meat or diseased cattle, which no one would contend could not and should not be restricted and punished. They are property, of course, and their possession would be protected, and if disturbed the law would redress. So it would be with Louisiana lottery tickets, which are confessedly not salable; and such bonds should be no more protected in sale than the lottery tickets pure and simple.

The case has been argued as if this defendant was charged to be and is an Austrian subject, and entitled by treaty stipulation to sell and dispose of his property. He is not so charged to be, and if he was, he would have to be treated exactly as if he was a citizen of the United States, and the State of Maryland. The criminal laws operate alike and equally upon residents and non-

residents.   As an Austrian he could not sell lottery
tickets in the Louisiana lottery, although he might own
them, with any more immunity and right than one of
our own citizens.   Constitutional provisions and treaty
stipulations never could have been intended to prevent
a State from forbidding that which was deemed injurious
to its people.   We think the evidence excepted to was
properly admitted.   The ruling will be affirmed.

> *Ruling affirmed, and*
> *cause remanded.*

