# AMERICAN LEGION, CLOPPER MICHAEL POST #10, INC. v. STATE OF MARYLAND

[No. 117, September Term, 1981.]

*Decided July 21, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Richard W. Douglas,* with whom were *Kaylor, Wantz & Douglas* and *Paul W. Ottinger* on the brief, for appellant.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *John R. Salvatore, State's Attorney for Washington County,* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents a question concerning the scope of and interrelationship between Maryland Code (1957, 1982 Repl. Vol.), Art. 27, § 255 (a) and § 356. More particularly, it presents the question whether certain activities conducted by a service or charitable organization are within the scope of § 255 (a) that makes it lawful for such organizations to conduct raffles and other gambling activities utilizing chance books or any other gaming device, or whether such activities are within the scope of § 356 that makes it unlawful to conduct a lottery.

Section 255 (a), appearing under the subtitle of Art. 27 entitled "Gaming," provides:

"*This subtitle may not be construed to make it unlawful for any* volunteer fire company or bona fide fraternal, civic, *war veterans',* religious *or charitable organization* or corporation *in* Allegany, Anne Arundel, Calvert, Caroline, Carroll, Charles, Dorchester, Frederick, Garrett, Kent, Prince George's, Queen Anne's, St. Mary's, Somerset, Talbot and *Washington count[y] to conduct or hold a carnival, bazaar, or raffle* for the exclusive benefit of any such volunteer fire company or fraternal, civic, war veterans', religious or charitable organization or corporation, if no individual or group of individuals benefits financially from the holding of any bazaar, carnival, or raffle or receives or is paid any of the proceeds from any carnival, bazaar, or raffle, for personal use or benefit. *It shall be lawful* for such organization or corporation *to award prizes* in cash or in merchandise *by such devices as* are commonly designated as paddle wheels, wheels of fortune, *chance books,* bingo, *or any other gaming*

*device,* provided however that any carnivals, bazaars, or raffles shall be managed by the members of such group, organization or corporation personally through its members, and further provided that in Carroll County the use of paddle wheels shall be subject to the restrictions of § 258 of this article." (Emphasis added.)

Section 356, appearing under the subtitle of Art. 27 entitled "Lotteries," provides:

"*No person shall draw any lottery* or sell any lottery ticket in this State; nor shall any person sell what are called policies, certificates or anything by which the vendor or other person promises or guarantees that any particular number, character, ticket or certificate shall in any event or on the happening of contingency entitle the purchaser or holder to receive money, property or evidence of debt." (Emphasis added.)

The petitioner, American Legion, Clopper Michael Post #10, Inc. (Legion), was charged with three counts of unlawfully selling a lottery ticket in violation of Art. 27, § 356, and three counts of unlawfully keeping a place for the selling of lottery tickets in violation of Art. 27, § 360.[1] In the Circuit Court for Washington County, in a trial without a jury, there was evidence presented to show that the Legion is an incorporated war veterans' organization that owns and operates a club for its members in Washington County. At the club a bartender sells packs of tickets for chances to win prizes. The tickets cost $.50 for a pack of five and are drawn from a jar or bowl when purchased. A different printed number appears on each ticket. Certain winning number combinations are posted, and tickets imprinted with those number combinations are "instant winners." To determine

---

1. Art. 27, § 360 provides in pertinent part:

"If any person shall keep any ... place for the purpose of selling or bartering any lottery ticket, policy, certificate or any other thing ... in the nature of a lottery ... he shall be subject to indictment...."

whether a ticket is an "instant winner," a player must compare the number printed on his ticket with the posted winning numbers. A player possessing an "instant winner" is immediately entitled to win a prize of either $1, $2, $5, or $10, payable either in cash or additional tickets.

In addition to "instant winners," each jar or bowl contains some "holder" tickets that are imprinted with numbers ending in "00." A player possessing a "holder" is eligible to win a $100 prize. The winning "holder" is imprinted with a number that corresponds to a number appearing underneath the seal of the last pack of tickets in the jar. That seal is broken and the winning "holder" number is posted when all of the tickets in a particular jar or bowl are sold. To determine whether a "holder" is a winner, a player must compare the printed number on the "holder" with the posted winning "holder" number.

The Legion engages in this gambling activity for the purpose of raising funds for its organization. The proceeds are used for the benefit of the organization and for other charitable purposes. No individual or group of individuals benefits financially or receives or is paid any of the proceeds.[2] The gambling activities are managed by the Legion's board of directors.

On the basis of this evidence, the trial court found the Legion guilty as to all six counts. On 7 August 1981, the Legion appealed to the Court of Special Appeals. On 3 December 1981, the Legion filed a petition for a writ of certiorari in this Court. We issued such a writ before consideration by the Court of Special Appeals. We shall reverse the judgment of the trial court.

---

[2]. The record shows that the employee who sells the packs of tickets, a bartender, does not receive compensation for performing the sales function. However, the record is unclear as to whether any of the proceeds of the gambling activities are utilized to compensate the bartender for performing the bartending function. The question of the Legion's compliance with the requirement of § 255(a) that no individual be paid any of the proceeds of a gambling activity was neither raised or decided in the trial court nor raised here and, therefore, need not be considered. Mraz v. County Comm'rs of Cecil County, 291 Md. 81, 85 n.2, 433 A.2d 771, 774 n.2 (1981); Md. Rules 813 and 885.

This Court has on occasion considered the definition of the term "lottery." *Bender v. Anne Arundel Arena, Inc.,* 248 Md. 181, 189-90, 236 A.2d 7, 11-12 (1967); *Shelton v. State,* 198 Md. 405, 410-11, 84 A.2d 76, 79 (1951); *Ballock v. State,* 73 Md. 1, 5-6, 20 A. 184, 185 (1890); *Boyland v. State,* 69 Md. 511, 512-13, 16 A. 132, 133 (1888); *Smith v. State,* 68 Md. 168, 170, 11 A. 758, 759 (1887). In *Ballock v. State,* 73 Md. 1, 20 A. 184 (1890), this Court considered a scheme involving the sale of Austrian Government bonds. Under that scheme, a purchaser was entitled not only to repayment of his investment with interest, but also to a prize, in the form of an additional sum of money, in the event that certain numbers printed on the bond corresponded to numbers drawn at random from a wheel of fortune. The Court characterized the scheme as a lottery and said:

> " '[W]here pecuniary consideration is paid and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to receive for it, that is a lottery.' " *Ballock,* 73 Md. at 6, 20 A. at 185.

*Shelton v. State,* 198 Md. 405, 84 A.2d 76 (1951), involved a scheme commonly known as the numbers game in which a purchaser chooses a number and wins money if the chosen number corresponds to a winning number that is determined on various bases, one such basis frequently being the betting results at a designated race track. This Court characterized the scheme as a lottery and said:

> "[T]he essential element of a lottery is the awarding of a prize by chance. . . . '[T]here is the offering of a prize, the giving of a consideration for an opportunity to win the prize, and the awarding of the prize by chance.' " *Shelton,* 198 Md. at 410-11, 84 A.2d at 79.

In *Bender v. Anne Arundel Arena, Inc.,* 248 Md. 181, 236 A.2d 7 (1967), this Court considered the question whether bingo constituted a lottery within the scope of the "Lotteries" subtitle. There it said:

"*The legislature has always considered* the forms of gambling it permitted to be made legal in Anne Arundel County to be gambling *games* or in the nature of a *gaming* table, *within the purview of the proscriptions of the provisions of the Code grouped under the subtitle of Art. 27 entitled 'Gaming,' and has never considered those forms of gambling to be schemes in the nature of a lottery prohibited by or within the purview of the provisions of the Code grouped under the subtitle of Art. 27 entitled 'Lotteries.'*

"Most states have held coin-operated gambling machines and bingo to be lotteries, finding that they combine the classic elements of a lottery of consideration, chance and prize. These states take the view that their constitutional and legislative provisions use the term 'lottery' in its generic sense; *other states have given the term a more restricted, precise and technical meaning. Maryland would seem always to have chosen the latter course, and to have drawn a definitive distinction between games of chance and schemes of lottery.*

. . .

By Chapters 701 and 716 of the Laws of 1939 (now §§ 247 and 260, respectively, of Art. 27 of the Code) the legislature authorized the playing of bingo in Allegany County and Baltimore City for the raising of money for churches, charitable and fraternal enterprises, and volunteer fire companies. Since then the legislature has authorized bingo games for similar purposes in fourteen more counties. *The legislative authorizations are found* in §§ 247 to 261B inclusive of Art. 27 of the Code *under the subtitle 'Gaming,'* and each of them begins either by saying that: 'Nothing in this *subtitle* shall be construed to make it unlawful * * * to operate * * * a *game* of bingo * * *,' or by saying that: 'Notwithstanding the provisions of this *subtitle,*' etc. . . . *None refers to the lottery statutes. Had the legislature considered*

*bingo to be in the nature of a lottery, either the exemption statutes would have been legislatively placed under the lottery subtitle or under both the gaming and lottery subtitles, or the exempting acts would have read 'nothing in this Article' rather than 'nothing in this subtitle.'*

. . .

"All lottery is a form of gambling but *all gambling need not be legislatively considered to be* or actually be *lottery,* and *although some, perhaps many, gambling games,* including machines and bingo, *have elements of lottery they have not been* considered as coming or *held to come within the purview of the lottery statutes." Bender,* 248 Md. at 189, 191, 192, 236 A.2d at 11-12, 13 (emphasis added.)

Thus, this Court did not characterize bingo as a lottery within the scope of the "Lotteries" subtitle. In reaching its conclusion, this Court determined that by placing an exemption for a gambling activity under the "Gaming" subtitle, and not under the "Lotteries" subtitle, the Legislature manifested its intent that the gambling activity, even though it possesses elements of a lottery, not be considered to be a lottery within the scope of the "Lotteries" subtitle.[3]

---

**3.** We note that in *Bender,* this Court commented as follows:

"In essentially the same form as they now are, the 'Gaming' laws (§§ 237 to 246 of Art. 27) and the 'Lottery' laws (§§ 356 to 371 of Art. 27) have been on the books since long before the first Code, that of 1860. Officials and courts in Maryland appear to have considered (a) that the lottery laws covered schemes for awarding a prize by lot or chance in which the only direct or personal participation by the seeker of the prize is his purchase of a ticket or its equivalent; and (b) that the gaming laws covered gambling by games of chance or gaming tables, as broadly defined (even though skill plays no part), in which the player participates personally and directly and is present when the game ends and the results become known." *Bender,* 248 Md. at 189-90, 236 A.2d at 12.

Thus, this Court recognized that in the past distinctions had been drawn between a lottery and a game on the basis of factors such as differences in the extent of a player's participation and presence during a gambling activity, at the time it ends, and at the time that its results become known. In so doing, this Court was engaged in a historical review of a basis previously utilized to distinguish between a lottery and a game. It was not

In 1975, the Legislature, assumably aware of our decision in *Bender, e.g., State v. Loscomb,* 291 Md. 424, 436, 435 A.2d 764, 770 (1981); *Bingham v. State,* 285 Md. 59, 65, 400 A.2d 765, 768 (1979), placed an exemption under the "Gaming" subtitle and not under the "Lotteries" subtitle for raffles and other gambling activities utilizing chance books and any other gaming devices when conducted by various service or charitable organizations in Washington County.[4] Indeed, the Legislature did not refer in any way to the "Lotteries" subtitle. These circumstances manifest the Legislature's unequivocal intent that such gambling activities not be considered or held to be lotteries within the scope of the "Lotteries" subtitle even though they possess elements of a lottery. Thus, if the gambling activities conducted by the Legion are within the scope of § 255 (a), they would not constitute a lottery within the scope of § 356. Accordingly, the underlying question here to be determined is whether the gambling activities conducted by the Legion are within the scope of § 255 (a).

This Court has not previously defined the term "raffle" and we find it unnecessary to do so here.[5] Section 255 (a) authorizes an exemption not only for raffles, but also for other gambling activities utilizing chance books or any other gaming device. The record here shows that the gambling activities conducted by the Legion utilized chance books in the form of packs of tickets and the gaming device of a jar or bowl from which those chance books were drawn. Under these circumstances, we are persuaded that the gambling

---

establishing a test to be applied in the future to determine whether a given gambling activity is a lottery within the scope of the "Lotteries" subtitle or a game within the scope of the "Gaming" subtitle.

**4.** Section 255 (a), originally enacted in 1949, created an exemption under the "Gaming" subtitle applicable only in Caroline County for raffles and other gambling activities utilizing chance books and any other gaming devices. 1949 Md. Laws, ch. 679. Subsequently, such gambling activities were authorized in 15 other counties. § 255 (a).

**5.** The definition of the term "raffle" relied upon by the Attorney General consists of the definition contained in Art. 27, § 257, as well as various dictionary definitions. 61 Op. Att'y Gen. 315, 319-21 (1976). We note that the applicability of the definition of the term "raffle" contained in § 257 is by its own terms limited to Baltimore City and Baltimore County and that the various dictionary definitions are generic in nature.

activities conducted by the Legion are within the scope of § 255 (a). Such a construction is consonant with the broad purpose of the Act that is to permit service or charitable organizations to raise funds for their benefit through a broad range of gambling activities including those employing chance books or any gaming device.

We now hold that the gambling activities conducted by the Legion are within the scope of § 255 (a) and are not a lottery within the scope of § 356.[6] Accordingly, we shall reverse the judgment of the trial court.

*Judgment of the Circuit Court for Washington County reversed.*

*Costs to be paid by Washington County.*

---

**6.** In view of our decision, we need not consider petitioner's remaining contentions that § 255 (a) and § 356 are in conflict and that the conflict must be resolved by rules of statutory construction requiring that: a specific statute control a general statute; a later statute control an earlier statute; and penal statutes be strictly construed.