529 A.2d 817

**STATE of Maryland**

v.

**149 SLOT MACHINES.**

**No. 149, Sept. Term, 1986.**

Court of Appeals of Maryland.

Aug. 19, 1987.

Ralph S. Tyler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Stephen Montanarelli and Bernard A. Penner, Sp. Asst. Attys. Gen., on the brief), Baltimore, for appellant.

Anne C. Ogletree, Denton (Michael Foster, Foster & Braden of Stevensville, and James E. Thompson, Jr. Thompson & Thompson, Centreville and Patrick E. Thompson, Grasonville, on the brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 264B, codified under the subtitle "Gaming" and new subheading "Slot Machines", makes it unlawful "to locate, possess, keep, maintain or operate [in Maryland] any slot machine", as therein defined.[1] Section 255(b), codified under the subtitle "Gaming", permits volunteer fire companies, bona fide fraternal, civic, war veterans', religious or charitable organizations desiring to conduct "a carnival, bazaar, or raffle" for their exclusive benefit to "award prizes in cash or in merchandise by such devices as are commonly designated as paddle wheels, wheels of fortune, chance books, bingo, *or any other gaming device ...*" (emphasis supplied). The issue in this case is whether the phrase "any other gaming

---

1. All subsequent statutory citations are to Article 27 unless otherwise noted.

device" in § 255(b) encompasses slot machines otherwise prohibited by § 264B.

## I

On September 28, 1984, Maryland State Police officers, executing search and seizure warrants, seized 149 slot machines from nineteen locations in Caroline, Dorchester, Queen Anne's, Somerset and Talbot Counties. The seized devices were in the possession of twenty-four organizations, each of which was either a bona fide fraternal or war veterans' group within the contemplation of § 255(b). The State subsequently filed forfeiture petitions, which were consolidated and transferred to the Circuit Court for Worcester County.

The parties filed cross-motions for summary judgment, stipulating to the following facts: 1) The machines seized by the police were slot machines as defined by § 264B; 2) each machine was used for gambling; and 3) no individual or group of individuals benefitted financially or received any of the proceeds from the machines' operation. The State contended that slot machines are inherently illegal to possess under § 264B, and thus, were subject to forfeiture as contraband per se. The organizations, however, argued that § 255(b) exempts such devices from § 264B's ban on the possession of slot machines.

The trial court (Cathell, J.) granted the organizations' motions and ordered the State to return the slot machines. The court first determined that slot machines are "gaming devices" within the contemplation of § 255(b). It then found that § 264B did not repeal the exemption to the gaming laws contained in § 255(b), and, as a consequence, the slot machines were not contraband per se when held by organizations to which § 255(b) applies. Therefore, the court concluded, the State could not seize the machines without instituting criminal proceedings. After the State appealed to the Court of Special Appeals, we granted certiorari prior to decision by the intermediate appellate court to consider the important issue raised in the case.

## II

In 1962, then Governor Tawes appointed a committee to recommend procedures to abolish slot machines. That committee, known as the Emory Commission, focused on the four Southern Maryland counties in which commercial gambling was legal; the committee acknowledged, however, that various nonprofit organizations also had licenses for slot machines in these counties. Emory Commission Report at 9. The committee report also noted that free play "slot machines are prevalent throughout most of the State.... In fact, there are probably more machines in other parts of the State...." *Id.* at 13. The Report recommended a statewide ban on any machine that could be used as a gambling device. *Id.* at 14.

The General Assembly responded to this Report by enacting Chapter 617 of the Acts of 1963, now codified as § 264B, which flatly proscribed slot machines in Maryland. In those jurisdictions that allowed slot machines prior to July 1, 1963, however, § 264B.II phased in this prohibition over five years by gradually decreasing the number of machines that could be licensed in each jurisdiction. Uncodified § 4 of the Act provided "[t]hat all laws or parts of laws, public general or public local, inconsistent with the provisions of this Act are hereby repealed to the extent of any such inconsistency."

During pendency of this legislation in the General Assembly, an amendment was proposed to exempt slot machines operated by various nonprofit organizations in Anne Arundel County; the amendment failed. 1963 House Journal 875, 924. At least three other attempts to amend § 264B to authorize the possession of slot machines by various organizations also failed. H.B. 547 (1973); H.B. 1470 (1972); H.B. 722 (1969). In 1985 and 1986, the General Assembly did pass such legislation, but then Governor Hughes vetoed it. VI Laws of Maryland 3630 (1986) (Governor's message vetoing S.B. 218); VI Laws of Maryland 3909 (1985) (Governor's message vetoing S.B. 774). By ch. 157 of the Acts of

1987, the General Assembly authorized certain organiza-
tions in eight counties to operate slot machines.[2]

## III

As originally enacted by ch. 679 of the Acts of 1949, what
is now § 255(b) contained a limited exemption from the
State's antigambling laws for Caroline County. Since that
time, the legislature has amended § 255 numerous times,
primarily to expand its geographic reach. Ch. 478 of the
Acts of 1981, however, not only added St. Mary's County,
but also expanded the allowable gambling activities permit-
ted in that county and specifically excluded slot machines.[3]

2.  Ch. 157 adds paragraph VI to § 264B, which authorizes bona fide
fraternal, religious, and war veterans' organizations in eight counties
to own no more than five slot machines if they meet the following
conditions: (1) The organization has been located in the county for at
least five years prior to applying for a license. (2) The organization
obtains a license for each machine. (3) The machines are located in
the organization's principal meeting place, and (4) the organization
uses at least 50% of the proceeds to benefit a charity.

3.  Section 255 now reads in pertinent part:
    "(b) *Generally*—(1) This subtitle may not be construed to make it
unlawful for any volunteer fire company or bona fide fraternal,
civic, war veterans', religious or charitable organization or corpora-
tion to conduct or hold a carnival, bazaar, or raffle for the exclusive
benefit of any such volunteer fire company or fraternal, civic, war
veterans', religious or charitable organization or corporation, if no
individual or group of individuals benefits financially from the
holding of any bazaar, carnival, or raffle or receives or is paid any
of the proceeds from any carnival, bazaar, or raffle, for personal
use or benefit.
    (2) The organization or corporation may award prizes in cash or
in merchandise by such devices as are commonly designated as
*paddle wheels, wheels of fortune, chance books, bingo,* or any other
gaming device.
    (3) However, carnivals, bazaars, or raffles shall be managed by
the members of such group, organization or corporation personally
through its members. In Carroll County the use of paddle wheels
shall be subject to the restrictions of § 258 of this article.
    . . . .
    (d) *Gaming devices in St. Mary's County.*—In St. Mary's County, a
volunteer fire company or bona fide fraternal, civic, war veterans',
religious, or charitable organization or corporation may conduct or
hold a carnival, bazaar, or raffle and may operate gaming devices

## IV

In determining whether the phrase "any other gaming device" in § 255(b) encompasses slot machines, we must ascertain the intent of the General Assembly in enacting the two sections. *Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142 (1985); *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977). In other words, we seek out the legislature's objective, goal, or purpose. *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987). In doing that, we look at the statutory language and we look at that language in the context in which it appears, including related statutes, pertinent legislative history, and "other material that fairly bears on the fundamental issue of legislative purpose or goal...." *Id.* at 515, 525 A.2d 628. Furthermore, we construe statutes, if at all feasible, so that no word or phrase is rendered surplus or meaningless. *City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984); *Hirsch v. Md. Dep't of Nat. Resources,* 288 Md. 95, 116, 416 A.2d 10 (1980).

The issue here is whether the phrase "any other gaming device," as used in § 255(b), includes slot machines. The organizations claim it does. The State insists that in view of § 264B, it does not. We must examine §§ 255(b) and 264B in light of the principles outlined above and our

which are commonly designated as paddle wheels, wheels of fortune, chance books, bingo, Nevada cards, stamp machines, or any other gaming device, excluding slot machines as defined in § 264B of this article, if no individual or group of individuals benefits financially from the operation of the gaming devices, or receives or is paid any of the proceeds from the operation of the gaming devices for personal use or benefit.... All proceeds from the operation of paddle wheels, wheels of fortune, chance books, bingo, Nevada cards, stamp machines or any other gaming device shall be used solely for the legitimate charitable, benevolent, or exempt purposes of the volunteer fire company or bona fide fraternal, civic, war veterans', religious, or charitable organization or corporation and may not be used to personally benefit any member or members.... The operation of gaming devices shall be personally managed by members of the volunteer fire company or bona fide fraternal, civic, war veterans', religious, or charitable organization or corporation."

previous decisions and decide which construction best comports with the goal or object the General Assembly sought to achieve in enacting these provisions.

In *Clerk v. Chesapeake Beach Park*, 251 Md. 657, 248 A.2d 479 (1968), we examined the effect of § 264B on local laws in Calvert County that authorized the possession of coin-operated mechanical and electrical "amusement" devices. These machines did not offer cash pay-offs, but awarded free plays that could be redeemed for merchandise. We held that § 264B banned the possession of these machines. We noted that § 246 required a liberal construction of the gaming laws in order "to prevent the mischiefs intended to be provided against." After studying the legislative history of § 264B, we determined that the General Assembly intended to ban "any ... machines that furnished gratification or reward to a winning player other than further free plays." 251 Md. at 666, 248 A.2d 479. Thus, we concluded that ch. 617, § 4 repealed local Calvert County laws to the extent that they authorized the use of slot machines. *Id.* at 669, 248 A.2d 479.

In *State v. 158 Gaming Devices*, 304 Md. 404, 499 A.2d 940 (1985), we again had to determine whether certain devices came within § 264B's definition of slot machine. We held that § 264B banned the possession of all such machines adapted for gambling. Thus, "a free-play device, equipped with ... odds mechanisms, a meter for recording the number of free plays released, or other recognized indicia of a gambling device" came within the statutory ban. 304 Md. at 432, 499 A.2d 940. In addition, we noted that slot machines are contraband per se because they are inherently illegal to possess. *Id.* at 433, 499 A.2d 940.

In *American Legion v. State*, 294 Md. 1, 447 A.2d 842 (1982), we addressed the relationship between § 255 and § 356, which makes it unlawful to conduct a lottery. At its club in Washington County, the American Legion sold packs of tickets from a jar that offered the purchaser a chance to win cash prizes, either instantly or when all the tickets from a particular jar were sold. The State argued that this

activity constituted the operation of a lottery in contravention of § 356. We rejected this contention. First, we noted that the legislature had always distinguished between gaming and lotteries. 294 Md. at 6, 447 A.2d 842 (quoting *Bender v. Arundel Arena,* 248 Md. 181, 189, 236 A.2d 7 (1967)). In fact, we noted that the provisions relating to lotteries and gambling appear in separate subtitles of Art. 27. Then we determined that the General Assembly did not intend that activities within the scope of § 255 be considered lotteries. *Id.* [294 Md.] at 8, 447 A.2d 842. Because the American Legion's activities involved an activity within the scope of § 255, we held that it had not violated § 356. *Id.* at 9, 447 A.2d 842.

The organizations in this case rely heavily on *American Legion.* According to them, we construed § 255 in that case to allow covered organizations to conduct any type of gambling activities. Thus, they argue, § 255 exempts eligible organizations from § 264B's ban on the possession of slot machines. We disagree.

In *American Legion,* we had to determine which subtitle of Art. 27 governed the Legion's activity. Because Maryland had traditionally drawn a distinction between games of chance and schemes of lottery, we concluded that the gaming subtitle, rather than the lottery subtitle, applied. We also noted that the activity involved chance books, one of the expressly permitted activities listed in § 255(b).

This case, however, involves two provisions of the same subtitle: § 264B outlawing slot machines and § 255(b) permitting certain gaming activities. Specifically, we are faced with interpreting the meaning of a general phrase, "any other gaming device," following a list of particular items. The other devices listed are not inherently illegal; they only become so when used for gambling purposes. The doctrine of *ejusdem generis,* then, would dictate that we construe "any other gaming device" to include only devices similar to the ones listed—those legal to possess when not used for gaming purposes. *158 Gaming Devices, supra,* 304 Md. at 429 n. 12, 499 A.2d 940; *State v. Sinclair & Sinwellan*

*Corp.*, 274 Md. 646, 658, 337 A.2d 703 (1975); *Giant of Md. v. State's Attorney*, 274 Md. 158, 167, 334 A.2d 107 (1975). Application of this doctrine would exclude slot machines from the phrase "any other gaming device." *See 158 Gaming Devices, supra*, 304 Md. at 433, 499 A.2d 940.

We think that this result accords with the legislative intent. Both *158 Gaming Devices* and *Chesapeake Beach* clearly indicate our belief that the General Assembly intended a total abolition of slot machines adapted for gambling. In those cases, we relied heavily on the Emory Commission Report in determining the meaning of § 264B. As noted above, that report acknowledged that many nonprofit organizations operated slot machines; however, the report did not recommend any exemption from its proposed statewide ban.

The General Assembly rejected on at least four occasions proposed amendments of § 264B that would have exempted certain organizations from its coverage. As earlier indicated, two such amendments were passed by the legislature, but vetoed by the Governor. The 1987 General Assembly passed ch. 157 to amend § 264B to allow nonprofit organizations in eight Eastern Shore counties to own slot machines. These persistent attempts to amend § 264B indicate that the 1963 General Assembly did not intend to exempt any organizations from § 264B's reach. *See Vournas v. Montgomery County*, 300 Md. 123, 129, 476 A.2d 705 (1984); *Demory Brothers v. Bd. of Pub. Works*, 273 Md. 320, 326, 329 A.2d 674 (1974); *Bosley v. Dorsey*, 191 Md. 229, 240, 60 A.2d 691 (1948).

Furthermore, § 264B, in uncodified § 4, provided that it repealed all inconsistent laws. Clearly, if § 255(b) allowed possession of slot machines prior to the enactment of § 264B, that provision would be inconsistent with the blanket prohibition of slot machines. Thus, § 4 mandated the repeal of § 255(b) to the extent of its inconsistency with § 264B. *Chesapeake Beach, supra*, 251 Md. at 669, 248 A.2d 479; *see also Farmers & Merchants Bank v. Schloss-*

*berg,* 306 Md. 48, 61, 63, 507 A.2d 172 (1986); *Dep't of Nat. Resources v. France,* 277 Md. 432, 460, 357 A.2d 78 (1976).

■ The broad interpretation of "any gaming device" proposed by the organizations in this case would render the list of particular devices surplusage. If the General Assembly intended to authorize the use of any and all gambling devices, it would not have listed the particular devices. In addition, it would not have amended § 255 in 1981 to allow a different group of activities in St. Mary's County. We thus reiterate that we construe "any other gaming device" to include only devices similar to the ones listed, namely, those legal to possess when not used for gaming purposes.

■ In light of the provisions of § 264B, therefore, we conclude that, at the time of the seizures in this case, the phrase "any other gaming device" in § 255(b) did not permit the organizations to own and operate slot machines. Such devices, being contraband per se, were properly seized by the police.[4]

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR THE ENTRY OF JUDGMENT IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.

---

**4.** The enactment of ch. 157 has no effect on this conclusion. That law does not become effective until July 1, 1987; thus, it cannot apply to the operation of slot machines prior to that date.