624 A.2d 955

STATE of Maryland

v.

CRESCENT CITIES JAYCEES FOUNDATION, INC. et al.

No. 47, Sept. Term, 1992.

Court of Appeals of Maryland.

April 23, 1993.

As Corrected on Denial of Reconsideration June 18, 1993.

Lucy A. Cardwell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Leonard Lucchi (Wolman & Lucchi, on brief), Upper Marlboro, Barry H. Gottfried (Fisher, Wayland, Cooper and Leader, on brief), Washington, DC, for respondent.

Gerard T. McDonough of Freer, Zanecki & McDonough, amicus curiae, for Berwyn Heights Volunteer Fire Department, Inc.

Joel D. Rozner & Stephen C. Buckingham of Rifkin, Evans, Silver & Rozner, Greenbelt, amicus curiae, for Betterment for United Seniors et al.

Argued before MURPHY, C.J., RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT M. BELL, and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired, specially assigned), JJ.

MURPHY, Chief Judge.

This case raises a question of statutory construction under the Maryland gaming laws, Maryland Code (1957,

1992 Repl.Vol.), Art. 27, § 236 *et seq.*[1] While these statutes generally prohibit gambling in this State, they provide some exemptions for charitable organizations in a number of designated counties. In particular, § 255(b), applicable in eighteen counties, including Prince George's County, permits certain gambling activities by charitable organizations, but explicitly prohibits any individual or group of individuals from benefitting financially from any such activity. Section 258B, applicable only in Prince George's County, permits charitable organizations to conduct "benefit performances," denominated as "casino nights," at which designated gaming events are permitted. This section does not include an express requirement that no individual or group of individuals can benefit financially from the event. The issue is whether, in view of the provisions of §§ 255(b) and 258B, volunteer dealers and other workers at casino night events in Prince George's County may benefit financially by receiving gratuities or tips from patrons.

I

Section 255(b), enacted in its original form by ch. 679 of the Acts of 1949, provides in subsection (b)(1) that it is not unlawful for a charitable organization "to conduct or hold a carnival, bazaar, or raffle for [its] exclusive benefit ..., if no individual or group of individuals benefits financially from the holding of any [such event] or receives or is paid any of the proceeds from [the event], for personal use or benefit." Subsection (b)(2) authorizes the charitable organization to "award prizes in cash or in merchandise by such devices as are commonly designated as paddle wheels, wheels of fortune, chance books, bingo, or any other gaming device." Subsection (b)(3) requires that such "carnivals, bazaars, or raffles shall be managed by the members of [the charitable organization] personally through its members." It was not until the enactment of ch. 438 of the Acts

---

1. All subsequent statutory citations are to Art. 27 unless otherwise indicated.

of 1973 that § 255(b) was made applicable to Prince George's County, having been passed by the Legislature on April 9, 1973, and signed into law by the Governor on May 21, 1973, with an effective date of July 1, 1973.

Also enacted at the same 1973 session of the Legislature by ch. 342 was § 258B(a) and (b), applicable only in Prince George's County. This section was passed as an emergency measure pursuant to Art. XVI, § 2 of the Maryland Constitution and was signed by the Governor on May 7, 1973, and took effect on that date. Section 258B(a) authorizes charitable organizations in Prince George's County

> "to conduct and operate any benefit performance, such as an outdoor or indoor carnival, fair, picnic, dance, card party, bingo party, bazaar, concert, contest, exhibition, lecture, barbecue or dinner, at which the public is invited or admitted ..., the net proceeds of which benefit performance shall inure to [the charitable organization] ..., and not for the private gain of any member."

This subsection further makes it lawful at such a "benefit performance ... to award prizes in merchandise ... and other things of value ... or by such mechanical devices as are commonly designated as paddle wheels, wheels of fortune, bingo, or other similar methods," and to award cash prizes not to exceed $1,000 per prize. Also required by this subsection as a condition to operate any such benefit performance is a written permit from the county and the further requirement that the benefit performance be "managed and operated only by members of such ... [charitable] organization personally." Section 258B(b) authorizes charitable organizations to conduct "raffles" under conditions similar to those set forth in subsection (a).

Subsection (c)(2) of § 258B was enacted by ch. 194 of the Acts of 1987; it defined the term "casino night" to mean "a benefit performance conducted under the provisions of this section at which card games, wheels of fortune, or roulette are played and prizes are awarded." Subsection (c)(3), enacted by the same 1987 Act, requires that a county

permit fee of $50 be charged "for each casino night to be conducted."[2]

From the aforegoing, it is clear that § 255(b), as it applies in Prince George's County, requires compliance with three conditions: (1) the proceeds of any event must inure to the exclusive benefit of the organization; (2) no individual may benefit financially from any event or be paid from its proceeds; and (3) members of the organization must personally manage any event. Under § 258B, five conditions are imposed: (1) the public must be invited or admitted to any event; (2) the proceeds of any event must accrue to the organization for the promotion of its charitable purposes, and not for the private gain of any member; (3) prizes may not exceed one thousand dollars; (4) the organization must obtain a permit for a benefit performance; and (5) members of the organization must personally manage and operate the event. It is thus readily evident that the second condition in § 255(b)—that no individual benefit financially from any event—is not expressly included as a condition in § 258B(a).

## II

The Crescent Cities Jaycees Foundation and the Prince George's Jaycees Foundation (Jaycees) are non-profit, charitable organizations in Prince George's County. In order to raise money for their philanthropic endeavors, the Jaycees periodically conduct "casino nights," at which patrons play various games of chance such as card games, roulette, and wheels of fortune. At these casino nights, the Jaycees permit patrons to tip volunteer dealers and other workers who staff the events.

In the spring of 1990, the Prince George's County Department of Environmental Resources (DER) revoked the Jaycees' permit to conduct casino nights on the ground that the

---

2. We note that ch. 194 of the Acts of 1987 was enacted as an emergency measure; it repealed and reenacted § 255(b), without amendments, and repealed and reenacted § 258B by adding subsections (c)(2) and (3) thereto.

organizations unlawfully permitted their volunteer dealers and workers to accept tips from patrons in violation of the "no-financial-benefit" provision of § 255(b)(1). The Jaycees appealed to the Board of Administrative Appeals for Prince George's County.

After a hearing, the Board vacated the revocations. It held that the "no-financial-benefit" provision of § 255(b)(1) does not apply to casino nights and, in any event, "is not a substantive provision, but is a rule of construction on how to interpret the regulation." The Board also determined that tips are not part of the net proceeds of a casino night event and, consequently, no worker received any financial benefit from the net proceeds of the event. In concluding that no applicable provision of the gaming laws prevented casino night volunteer workers from receiving tips, the Board observed that the giving of tips "is not an element or step of the gambling transaction itself" but rather was a gratuity "voluntarily given to one who performs a service."

The County appealed the Board's decision to the Circuit Court for Prince George's County; the State was permitted to intervene in support of the County's position that § 255(b)(1) prohibited the tipping of volunteer workers. The court (Rymer, J.) affirmed the Board's decision. It agreed with the Board that tips are not part of the net proceeds of the benefit performance and that nothing in § 258B(a) prohibits tipping. It concurred with the Board that § 255(b) has no application to casino nights, in effect rejecting the argument that the "no-financial-benefit" clause of § 255(b)(1), which prohibits tipping, is incorporated into the provisions of § 258B. The court reasoned that the wording of § 255(b), which provides that the gaming laws "may not be construed to make it unlawful" for charitable organizations to conduct gambling events under certain conditions, indicates that the Legislature was merely creating a "presumption of legality" for events conducted in compliance with those conditions. Where an event violates one of the conditions, according to the court, the presumption of legality afforded to the event by § 255(b) simply

falls away, and a reviewing court would evaluate the event under the remaining provisions of the gaming laws.

The State appealed. We granted certiorari before review by the intermediate appellate court to consider the issue of significant import raised in the case to the sponsors of charitable gaming events in Prince George's County.

### III

Reduced to its essence, § 255(b) instructs that it "may not be construed [as] unlawful" for charitable organizations such as the Jaycees to conduct specified gambling activities at "carnivals, bazaars and raffles," as long as they comply with the three conditions previously outlined. By contrast, § 258B applies to casino nights and expressly permits Prince George's County charitable organizations such as the Jaycees to conduct such benefit events, as long as they comply with the five conditions previously set forth.

The State does not suggest that the provisions of § 258B(a) expressly prohibit tipping, or that tips are part of the proceeds of a casino night event; rather, the State argues that § 255(b) applies to casino nights, that its provisions are in effect superimposed upon and supplement those of § 258B(a), and that the "no-financial-benefit" clause of § 255(b) therefore prohibits tipping at casino nights in Prince George's County.

The Jaycees do not deny that gratuities given to the volunteer workers at casino nights constitute a "financial benefit" as that term is used in § 255(b). They argue, rather, that § 255(b) does not apply to casino nights and, even if it does, its provisions are not applicable to casino nights conducted in compliance with § 258B(a). The Jaycees essentially endorse the circuit court's view, arguing that §§ 255(b) and 258B(a) are separate statutes and do not conflict. Refining the circuit court's "presumption of legality" concept, they submit that § 255(b) cannot be read to limit what is lawful under the gaming laws, but only limits what the gaming laws might suggest is unlawful. Since

casino nights which comply with the provisions of § 258B(a) (but which allow tipping) are clearly lawful, the Jaycees assert, § 255(b) has no bearing on their legality because that section only serves to protect some events which might otherwise be illegal, without outlawing events which would otherwise be legal.

The Jaycees maintain that the Board's decision was predicated on its factual finding, to which we should defer, that tips are not part of the net proceeds of a casino night event and thus are not violative of § 258B(a). As we see it, however, the dispositive issue in the Board's decision was its determination that § 255(b) does not apply to casino nights but rather is merely a rule of construction. This obviously is a purely legal conclusion to which the appellate court owes no deference.

As we have so often said, the cardinal rule of statutory construction is to ascertain and effectuate legislative intention. *State v. Bricker*, 321 Md. 86, 92, 581 A.2d 9 (1990); *Privette v. State*, 320 Md. 738, 744, 580 A.2d 188 (1990); *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471 (1988). As we said in *Bridges v. Nicely*, 304 Md. 1, 10, 497 A.2d 142 (1985), when construing a provision of a statute, which is part of a statutory scheme, the legislative intention must be gathered from the entire statute, rather than from only one part. In other words, where statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope. *Id.* at 10, 497 A.2d 142, and cases there cited.

Thus, we do not read particular language in a statute in isolation or out of context; rather, we construe statutory language in light of the Legislature's general purpose and in the context of the statute as a whole. *Forbes v. Harleysville Mutual*, 322 Md. 689, 696–97, 589 A.2d 944 (1991); *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–16, 525 A.2d 628 (1987). In this regard, we note that § 246 provides a specific directive on the proper

interpretation of the State's gaming laws. That section requires that "the courts shall construe the preceding sections [prohibiting gambling and betting] liberally, so as to prevent the mischiefs intended to be provided against." We have held § 246 to apply to all sections prohibiting gambling, even those enacted subsequent to § 246. *Gaither v. Cate*, 156 Md. 254, 144 A. 239 (1929).

The Attorney General of Maryland, in an opinion dated February 2, 1988, reported at 73 Op. Att'y Gen. 152, responded to a legislative inquiry of "whether dealers or other attendants at Casino Nights in Prince George's County may accept tips from patrons." The Attorney General said that the practice violated § 255(b), and that charitable organizations knowingly permitting the practice would be engaged in illegal gambling. In so holding, the Attorney General noted the absence in § 258B(a) of any express prohibition on tipping of volunteer workers at Casino Night activities. Nevertheless, while he concluded that tips given to dealers at Casino Nights were not "proceeds of the gambling," he opined that such tips did violate § 255(b)(1). He said:

"We think that a member of an organization who receives tips for serving as a dealer or other attendant at the organization's casino night clearly does 'benefi[t] financially from the holding of' the casino night. Moreover, we think that the benefit to that individual is a direct one and thus clearly contravenes the intent of the restriction.... Accordingly, we conclude that the receipt of tips by dealers or other attendants at casino nights violates § 255(b)(1).

"Section 258B(a) does not contain language like that in § 255(b)(1) expressly imposing a broad prohibition against private gain from the holding of a fundraiser. Accordingly, it does not by itself clearly prohibit dealers or attendants from accepting tips. However, we do not think that § 258B was intended to negate any of the restrictions imposed by § 255 on gambling for charitable purposes.

"Section 258B was enacted by Chapter 342 of the Laws of Maryland 1973. Section 255 was made applicable in Prince George's County by an amendment enacted in the same session of the General Assembly. Chapter 438, Laws of Maryland 1973. The General Assembly was presumably aware that it was enacting two laws, with somewhat differing language, regarding gambling by nonprofit organizations in Prince George's County. Therefore, the two laws should be read together so as to give full effect to each. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 516, 525 A.2d 628 (1987). That can be accomplished by reading their provisions as cumulative, giving effect to the more restrictive whenever the provisions are not identical."

73 Op. Att'y Gen. 154–55 (footnote omitted).

■ Of course, courts are not bound by an Attorney General's Opinion. *Read Drug/Chem. Co. v. Claypoole*, 165 Md. 250, 257, 166 A. 742 (1933); however, "when the meaning of legislative language is not entirely clear, such legal interpretation should be given great consideration in determining the legislative intention." *Id.* In this regard, the Legislature is presumed to have known of the Attorney General's statutory interpretation and to have acquiesced in that construction absent change in the statutory language. *Id.* at 257–58, 166 A. 742. To like effect, *see Crest Investment v. Cohen*, 245 Md. 639, 648, 227 A.2d 8 (1967). *See also Twinbrook Swim Pool v. Comptroller*, 274 Md. 88, 333 A.2d 49 (1975); *Leitch v. Gaither*, 151 Md. 167, 176–77, 134 A. 317 (1926).

■ We think that the Board and the circuit court erred by focusing on the language of § 255(b)(1) in isolation from the rest of § 255(b). As set forth earlier, § 255(b)(2) provides that an organization "may award prizes in cash or in merchandise by such devices as are commonly designated as paddle wheels, *wheels of fortune*, chance books, bingo, or *any other gaming device.*" *Id.* (emphasis added). This language indicates that the provisions of § 255(b) encom-

pass casino night benefit performances, for wheels of fortune and "other gaming devices," such as card games and roulette, are precisely the games which comprise casino night activities.[3] This reading of the statute is supported by the fact that, as originally enacted in 1949, § 255(b) was not subdivided into separate parts. Rather, the legislature conceived that the playing of wheels of fortune and other gaming devices would occur at carnivals, bazaars and raffles, indicating that it considered those events to encompass what we now know as casino nights. Moreover, the broader context of § 255 confirms this reading of § 255(b). For example, Section 255(f)(5), enacted by ch. 464 of the Acts of 1990 and entitled "Baltimore County—Gaming—Casino Events", provided in part: "In Baltimore County, notwithstanding the provisions of subsection (b) of this section ...: Card games, dice games, and roulette, and any events commonly known as casino nights, are prohibited." Section 255(g)(3) similarly provides in part: "In Howard County, notwithstanding the provisions of subsection (b) of this section: Card games, dice games, roulette, and any events commonly known as casino nights are prohibited." Obviously, the Legislature would not have found it necessary to prohibit casino nights in Baltimore and Howard Counties, specifically disclaiming the reach of § 255(b), if that section did not extend to casino nights. To construe § 255(b) otherwise would render the prohibitions on casino nights in § 255(f)(5) and (g)(3) superfluous, in contravention of our practice to read a statute, where possible, to give effect to all of its parts. *Sinai Hosp. v. Dep't of Employment,* 309 Md. 28, 40, 522 A.2d 382 (1987); *Management Personnel Serv. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310 (1984).

 Giving full sway to the legislative intention so clearly expressed in § 246 that the gaming law prohibitions be liberally construed to prevent the evils inherent in gam-

---

**3.** As we have already noted, § 258B(c)(2) states that a " 'casino night' means a benefit performance ... at which card games, wheels of fortune, or roulette are played and prizes are awarded."

bling; we construe the restrictive conditions in § 255(b) to be cumulative to those contained in § 258B(a). In this regard, we again observe that § 258B became effective on May 7, 1973, while § 255(b) was made applicable in Prince George's County, effective July 1, 1973. We presume, of course, that the Legislature acts with full knowledge of its prior enactments and intends that related statutes be blended into a harmonious body of law, even though they took effect at different times and without reference to one another. *Bricker, supra,* 321 Md. at 93, 581 A.2d 9. There would seem to be few more appropriate situations for applying this presumption than the instant case, in which the General Assembly amended § 255(b) to include Prince George's County just two weeks after it enacted § 258B. We must assume that the Legislature, in extending the reach of § 255(b) to Prince George's County, was fully aware of its decision just two weeks earlier to expressly authorize casino nights in that county under certain conditions, although not including an express requirement that no individual benefit financially from the gambling activity. We conclude, therefore, that the General Assembly realized that in its 1973 amendment of § 255(b) to include Prince George's County in its coverage, it was implicitly including the no-financial-benefit restriction within the conditions imposed for casino night events conducted under § 258B(a).

## IV

Sections 255(b) and 258B, as they apply in Prince George's County, are part of a single statutory scheme permitting gaming activities by charitable organizations in that county. As we have already noted, by ch. 194 of the Acts of 1987, the Legislature repealed and reenacted §§ 255(b) and 258B in a single bill, indicating legislative recognition that these provisions not be considered as distinct enclaves of legality in the laws governing gaming activities by charitable organizations. Applicable here is our long-standing rule against construing sections of a statute in isolation from one another without regard to

actual legislative intent. *See Forbes,* 322 Md. at 696–97, 589 A.2d 944. We have previously adhered to this rule in interpreting the reach of § 255(b). In *State v. 149 Slot Machines,* 310 Md. 356, 529 A.2d 817 (1987), we held that the phrase "any other gaming device" in § 255(b) did not exempt an organization desiring to use slot machines from the ban on slot machines in § 264B. It was our view that a contrary result would contravene the Legislature's clear hostility to slot machines, manifested in four separate rejections of amendments that would have exempted certain organizations from § 264B. *Cf. American Legion v. State,* 294 Md. 1, 447 A.2d 842 (1982) (charitable organizations may conduct raffles under § 255, despite the prohibition on lotteries in § 356, because the Legislature did not intend for § 356 to apply to raffles conducted under § 255).

■ Accordingly, we are in full agreement with the State's position that the condition in § 255(b) that no individual may benefit financially from the gaming activity prohibits tipping of volunteer dealers and other workers, and that this prohibition is applicable to casino night activities under § 258B.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE ORDER OF THE BOARD OF APPEALS OF PRINCE GEORGE'S COUNTY AND TO REMAND TO THE BOARD WITH DIRECTIONS THAT IT ENTER AN ORDER, CONSISTENT WITH THIS OPINION, PURSUANT TO THE AUTHORITY VESTED IN THE BOARD UNDER THE PROVISIONS OF SECTION 2–126 OF THE PRINCE GEORGE'S COUNTY CODE (1991); COSTS TO BE PAID BY THE APPELLEES.