Dear Delegate Mitchell:
In a previous opinion of this Office, Attorney General Sachs construed the Maryland Public Accountancy Act ("the Act") to permit unlicensed accountants to issue "compilation" and "review" reports concerning financial statements. See 66 Opinions of theAttorney General 190 (1981) ("the 1981 Opinion"). You have asked us to review the conclusion of that opinion and to consider the effect of subsequent revisions of the Act and of the professional standards governing certified public accountants.
After reviewing the changes to the law since 1981, as well as the changes in professional standards, we confirm the interpretation of the Act set forth in the 1981 Opinion with one modification. While a reasonable argument can be made for a different construction of the statute concerning review reports, the conclusion of the 1981 Opinion is consistent with the statute governing public accountants, both as it existed in 1981 and as subsequently amended. Moreover, the 1981 Opinion has guided the application of the Act for nearly 20 years and, absent a contrary interpretation of the current statute by the State appellate courts, any significant change in the Act is the prerogative of the General Assembly.
 I The 1981 Opinion
In 1981, the Chairman of the Maryland State Board of Public Accountancy asked the Attorney General for an opinion whether "unlicensed"[1] accountants could issue compilation and review reports prepared in accordance with the guidelines established by the American Institute of Certified Public Accountants ("AICPA"), as published in its Statement on Standards for Accounting andReview Services No. 1: Compilation and Review of FinancialStatements (1978) ("SSARS No. 1").
At the time, the Maryland Public Accountancy Act was contained in Article 75A of the Annotated Code of Maryland.[2]
That Act created a State Board of Public Accountancy and established a licensing and regulatory regime for the accounting profession. The Act restricted the use of various designations to licensed accountants, otherwise known as certified public accountants or CPAs. In particular, § 14 of the Act prohibited an unlicensed person from holding out that the person provided public accounting or "auditing" services, from using the titles "certified public accountant," "public accountant," or "auditor," and from using the initials "CPA" or any other title, abbreviation, words, or device that "tends to indicate that such person is a certified public accountant or [that] is likely to be confused with `certified public accountant' or `CPA.'" Former Article 75A, § 14(a), (b), (e).[3] See also Former Article 75A, § 18 (use of those terms in conjunction with unlicensed person's name is prima facie evidence of violation of Act).
The Act did not directly define the practice of public accounting,[4] but rather specified a range of accounting services that could be performed by persons without a license. Section 15(e) explicitly permitted an unlicensed person to provide the following services:
 Offering or rendering to the public bookkeeping and tax services, including division [sic] and installing systems, recording and presentation of financial information or data, preparing financial statements, schedules, reports and exhibits, or similar services. . . .
Former Article 75A, § 15(e). Such services could be provided by an unlicensed person only on the condition that the person not use the titles or terms prohibited by § 14 and:
 not represent that an `audit' or `examination' has been made [and] not furnish written certificates or opinions concerning the correctness, fairness, or fair presentation of financial statements, schedules, reports, or exhibits. . . .
Id. Thus, somewhat indirectly, the Act allowed only a licensed accountant to perform an audit or to render an opinion on the correctness or fairness of financial statements.
Then, as now, the terms "compilation" and "review" did not appear in the Maryland statute. The 1981 Opinion quoted the AICPA definition of "compilation":
 Presenting in the form of financial statements information that is the representation of management (owners) without undertaking to express any assurance on the statements.
SSARS No. 1, § 100.04 quoted in 66 Opinions of the Attorney General
at 192. The 1981 Opinion also relied on the AICPA definition of "review," which begins as follows:
 Performing inquiry and analytical procedures that provide the accountant with a reasonable basis for expressing limited assurance that there are no material modifications that should be made to the statements in order for them to be in conformity with generally accepted accounting principles, or, if applicable, with another comprehensive basis of accounting.
Id. at 193-94. The definition of "review" then distinguishes a review from both a compilation and an audit. In essence, while a person who provides a "compilation" does not provide any assurance on the statements, a person performing a "review" must conduct sufficient analytical procedures to provide a reasonable basis for a "limited assurance" — i.e., that the person is not aware of any material modifications that need to be made to conform the financial statements to generally accepted accounting principles (GAAP). However, a review is not equivalent to an audit as "it does not provide assurance that the accountant will become aware of all significant matters that would be disclosed in an audit"and therefore does not permit the accountant to express an opinion on the financial statements taken as a whole. Id
The 1981 Opinion referred to these definitions of "compilation" and "review" in SSARS No. 1, examined them against the Maryland statute, and concluded that the Maryland statute permitted an unlicensed person to provide compilation and review reports, so long as that person: (1) uses reporting language substantially in accordance with the language recommended in SSARS No. 1; (2) does not purport to represent that he or she had made an "audit" or "examination"; and (3) does not give an opinion as to the correctness, fairness, or fair presentation of the financial statements. 66 Opinions of the Attorney General at 195.
You have asked whether that conclusion remains a valid interpretation of the Maryland Public Accountancy Act. We first consider intervening changes in the law and in professional standards.
 II Amendments to the Public Accountancy Act
A. 1986 Revision of Statute
The General Assembly has revisited the Public Accountancy Act on several occasions since 1981.[5] However, only a 1986 amendment bears on the issue raised in your inquiry.See Chapter 780, § 2, Laws of Maryland 1986. That legislation effected a comprehensive revision of the Act as a prelude to its inclusion in the new Business Occupations Professions Article three years later. Among other things, the 1986 amendment rectified a major omission in the law — an explicit definition of the practice of certified public accountancy. In adding that definition to the statute, the General Assembly had the opportunity to squarely address the conclusion of the 1981 Opinion.
The new § 2-101(e) of the revised Article 75A defined "practice certified public accountancy" to mean:
 (1) Conducting an audit or an examination of financial statements; or
 (2) Providing a written certificate or opinion as to the correctness of the information or as to the fairness of the presentation of the information in any:
(i) Financial statement;
(ii) Schedule;
(iii) Report; or
(iv) Exhibit.
This language was evidently drawn from the former § 15(e) of Article 75A without substantive revision.[6] In addition, portions of the former § 14 of Article 75A were combined and recodified in a new § 2-603(a)[7]:
 [U]nless authorized to practice certified public accountancy under this title, a person may not represent to the public by use of the title "licensed certified public accountant", "certified public accountant", "public accountant", or "auditor", by use of the description "CPA", or by other title, by description of services, methods, procedures, or otherwise, that the person is authorized to practice certified public accountancy in the State.
In sum, this new provision restated, in more generic and summary form, the prohibitions listed in several subsections of former § 14.[8] See also § 2-603(c) (incorporating evidentiary rule of former § 18).
Conspicuously absent from both new provisions is any reference to "compilation" or "review" reports.[9] Nor has any subsequent amendment added those terms to the statute.
Thus, the new definition of "practice certified public accountancy" and the revised prohibition against the use of certain terms both essentially incorporated the language of the pre-1986 statute. Based on the language enacted in 1986, it does not appear that the General Assembly intended to include the preparation of compilation and review reports within the definition of the "practice certified public accountancy."
B. Legislative History
Such a view is supported by legislative history of the 1986 amendment. House Bill 1261 was a product of the Business Occupations Article Committee, the committee responsible for drafting what in 1989 became the Business Occupations and Professions Article, as part of the ongoing code revision process.See Chapter 3, § 1, Laws of Maryland 1989. In recommending the changes made by the 1986 legislation, the committee determined that the Act required some substantive revision as well as simple recodification. Business Occupations Article Committee Report on House Bill 1261 ("BOAC Report").[10]
The BOAC Report stated that House Bill 1261 addressed the following issues in the existing law: (1) regulated practice undefined; (2) obsolete terminology; (3) references to outdated procedures; (4) controlling court decisions not reflected in law; (5) unclear, incoherent licensing scheme; (6) questionable authorization for "inactive" licensee status; (7) licensing of individuals and licensing of firms not clearly differentiated; (8) qualifications for corporations and partnerships not clearly differentiated; (9) low criminal penalties; and (10) poor organization. However, it further noted that "for the most part, the proposals under the bill find their basis in actual law and practice and do not deviate substantially from the current law asit is now applied." BOAC Report at p. 2 (emphasis added). For example, the Report stated that the definition of "practice certified public accountancy" added by the 1986 bill "is structured from references in the current law to those accountancy services that could not be provided by a person who does not have a license." BOAC Report at p. 3.
Likewise, the Senate Economic and Environmental Affairs Committee, which favorably reported the bill, noted that the bill "largely reorganizes and clarifies current law on public accountancy," citing the new practice definition as an example.Summary of Committee Report on House Bill 1261, Accountants at p. 2. The Committee Report also identified some "substantive changes" in the bill, none of which pertain to the provision of compilation or review services. Id.
Various accounting-related organizations participated in the drafting of this legislation, including the State Board of Public Accountancy, the Maryland Association of Certified Public Accountants (MACPA), and the Maryland Society of Accountants (MSA). While the bill was under consideration by the Legislature, the President of MACPA wrote to the Chairman of the Senate Economic and Environmental Affairs Committee and lauded the bill, stating that: "HB 1261 does not change current Article 75A in any significant way." Letter of Joseph A. Novotny to Senator Norman Stone (March 24, 1986).
C. Summary
Thus, neither the language of the 1986 amendment nor its legislative history indicates that the General Assembly intended to disavow the conclusion of the 1981 Opinion and restrict the preparation of compilation and review reports to licensed accountants. The Legislature is presumed to have known of the interpretation of the law contained in the 1981 Opinion. SeeState v. Crescent Cities Jaycees, 330 Md. 460, 470, 624 A.2d 955
(1993). If the General Assembly had changed the law to limit the preparation of compilation and review reports to licensed accountants, such a turnaround would have been a "substantial" change in the application of the statute. Therefore, the statements in the legislative history of House Bill 1261 that the bill: (1) caused no "substantial" change in the law's application; and (2) primarily reorganized and clarified existing law, suggest that the General Assembly accepted the interpretation in the 1981 Opinion.
 III Amendments of Professional Standards
In 1992, the AICPA promulgated SSARS No. 7, which amended certain portions of SSARS No. 1 concerning compilation and review reports. See 175:3 Journal of Accountancy (March 1993) at pp. 98-102. In particular, it made two changes pertinent to your inquiry. First, it amended the introductory paragraph of the reporting language for both compilation and review reports to include specific citation of the "Statements on Standards for Accounting and Review Services issued by" the AICPA, rather than a general reference to "standards established by" the AICPA. This change does not appear to alter the substance of the language that the AICPA recommends for compilation and review reports, but simply makes the reference to AICPA standards more specific.
Second, SSARS No. 7 added one footnote and expanded a second footnote to a paragraph of SSARS No. 1 that includes a definition of "financial statement"[11] — a term used in the definitions of both "compilation" and "review" in SSARS No. 1. The new footnote language added by SSARS No. 7 clarifies a reference to GAAP in the definition and provides cross-references to other AICPA pronouncements concerning GAAP and other bases of accounting.[12]
These amendments in SSARS No. 7 clarify, but do not change the substance of, the definitions of "compilation" and "review" used in the 1981 Opinion. Accordingly, they do not themselves mandate revision of the 1981 Opinion.
 IV Critique of the 1981 Opinion
This Office does not readily revisit the conclusion of a prior opinion, even one issued during the term of a prior Attorney General. A 1987 opinion stated the standards that we apply:
 Although the opinions of this office do not have the binding effect of judicial decisions, nevertheless they "serve as important guides to those charged with the administration of the law." In the absence of judicial decisions, Attorney General opinions promote steady application of the law. Accordingly, this office stands by its precedent, much as a court would. Like the judicial doctrine of stare decisis, our respect for precedent is not simply reflexive conservatism. It "serves the broader societal interests in evenhanded, consistent, and predictable application of legal rules. When rights have been erected or modified in reliance on established rules of law, the arguments against their change have special force." We do not overrule a prior opinion simply because we might have resolved a close question the other way, were we first presented with it. At the same time, we will not perpetuate a significant mistake in legal reasoning. We are also prepared to recognize that a prior opinion has been eroded by changed circumstances.
72 Opinions of the Attorney General 200, 202 (1987) (citations omitted).
A. General Assessment of the 1981 Opinion
Upon review, the 1981 Opinion appears to be a reasonable construction of the State law governing public accountants as it applies to accounting practices that are not specifically defined in, or explicitly regulated by, the statute. The 1981 Opinion interprets the statute in a manner that ensures regulatory oversight of auditing practices, while not unduly restricting competition for other types of accounting services. In the nearly two decades since the 1981 Opinion was issued, the Court of Appeals has apparently not had occasion to construe the Act to different effect. Nor has the Legislature expressed a contrary intent, despite several opportunities in bills amending the Act.
The key question now, as then, is whether a "compilation" or "review" involves an "opinion on the correctness of the information or the fairness of the presentation of the information" in the financial statements. Compare BOP, § 2-101(f) (definition of "practice certified public accountancy") with
former Article 75A, § 15(e). The AICPA definition of "compilation" states that the accountant gives no assurance on the financial statements. Moreover, the recommended reporting language that is to accompany a compilation report is more in the nature of a disclaimer than an assertion as to correctness or fairness of the financial statements.[13] Thus, the conclusion in the 1981 Opinion as to compilations appears soundly grounded in the statute.
With respect to reviews, the issue is less clear. The AICPA definition of "review" characterizes it as a "limited assurance" that no material modifications need be made to the statements to conform with generally accepted accounting principles (GAAP). The recommended language that is to accompany a review asserts, with somewhat less force, that the accountant is not aware of any significant deviations from GAAP. Thus, a review arguably involves an "assurance" concerning the financial statements that, although stated in negative terms — i.e., lack of knowledge of deficiencies in the statements, has affirmative implications as to the information in the statements. In that view, only licensed accountants may provide such services.[14]
On the other hand, the reporting language recommended for a review report is phrased in such negative terms that it is not unreasonable to conclude, as the 1981 Opinion did, that it falls short of an affirmative "opinion on the correctness" of the information in the financial statements or the fairness of its presentation.[15] Moreover, the Act explicitly permits unlicensed persons to prepare financial statements and reports not "expressly included in the definition of practice certified public accountancy." BOP, § 2-102(a) (emphasis added). In such circumstances, absent a contrary directive from the Legislature or the appellate courts, we would ordinarily decline to modify the 1981 Opinion.[16]
B. Omission of Part of Reporting Language
A significant omission in the 1981 Opinion, however, has been brought to our attention. In measuring the definitions of "compilation" and "review" against the Public Accountancy Act, the 1981 Opinion quoted reporting language recommended by the AICPA for compilations and for reviews. See 66 Opinions of the AttorneyGeneral at 192 (compilation reporting language), 194 (review reporting language). At the time of the 1981 Opinion,[17] the AICPA recommended the following language:
for compilations:
 I (we) have compiled the accompanying balance sheet of XYZ Company as of December 31, 19XX, and the related statements of income, retained earnings, and cash flows for the year then ended, in accordance with standards established by the American Institute of Certified Public Accountants.
 A compilation is limited to presenting in the form of financial statements information that is the representation of management (owners). I (we) have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them. for reviews:
 I (we) have reviewed the accompanying balance sheet of XYZ Company as of December 31, 19XX, and the related statements of income, retained earnings, and cash flows for the year then ended, in accordance with standards established by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the management (owners) of XYZ Company.
 A review consists principally of inquiries of company personnel and analytical procedures applied to financial data. It is substantially less in scope than an audit in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, I (we) do not express such an opinion.
 Based on my (our) review, I am (we are) not aware of any material modifications that should be made to the accompanying financial statements in order for them to be in conformity with generally accepted accounting principles.
SSARS No. 1. The recommended reporting language thus generally describes the nature of the particular type of report. It also distinguishes compilations and reviews from an audit and explicitly disclaims any opinion that would be based upon an audit.
With respect to both compilations and reviews, the 1981 Opinion accurately quoted portions of the recommended reporting language, but in each instance omitted without explanation the introductory paragraph of the reporting language recommended by the AICPA. The 1981 Opinion concluded that an unlicensed accountant may lawfully provide a compilation or review if, among other things, the report includes language "substantially similar" to that recommended by SSARS No. 1. However, the 1981 Opinion provided no guidance on whether the unlicensed accountant is to use, paraphrase, or ignore the introductory paragraph of the recommended reporting language. We believe it is appropriate to fill the gap left by the 1981 Opinion.
C. Modification of Conclusion
Apart from stating the time period covered by the financial statements — which may be obvious from the statements themselves the introductory paragraph of the recommended reporting language for both compilations and reviews adds nothing to the descriptions of the terms "compilation" and "review" other than to make a general reference to the standards of the AICPA. The drafter of the 1981 Opinion may simply have thought the initial paragraphs redundant or without substance. Nonetheless, those paragraphs do provide a reference, however general, that would permit a reader to obtain further information on the nature of a compilation or review. At the same time, however, in representing that the person has prepared the statements "in accordance with standards established by the American Institute of Certified Public Accountants," the introductory paragraphs create some potential for confusion as to whether the preparer is a CPA — i.e., a licensed accountant — and implicate the Act's prohibition against the misleading use of the term "certified public accountant."
Any such confusion can be remedied by an explicit statement that the preparer of the report is not licensed. The reporting language already distinguishes a compilation or review from an audit. The report should similarly ensure that there is no suggestion that the person providing the report is licensed to perform audits. To this end, we modify the conclusion of the 1981 Opinion to state that an unlicensed person may provide a compilation or review report, but only if he or she uses reporting language substantially in accordance with the language recommended by the AICPA that includes not only a statement that the report is not the result of an audit, but also a statement that the preparer is not licensed to perform audits.[18] Accordingly, the second paragraph of the reporting language used by unlicensed persons who provide compilation or review reports should include such a disclaimer. Such language, indicated in italics, could read substantially as follows:
for compilations:
 A compilation is limited to presenting in the form of financial statements information that is the representation of management (owners). I (we) have not performed a review of the accompanying financial statements. I am (we are) not licensed to perform audits and have not audited these statements. Accordingly, I (we) do not express an opinion or any other form of assurance on them.
 for reviews:
 A review consists principally of inquiries of company personnel and analytical procedures applied to financial data. It is substantially less in scope than an audit in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. I am (we are) not licensed to perform audits and have not audited these statements.
Accordingly, I (we) do not express an opinion on the financial statements as a whole.
 V Conclusion
In summary, we confirm the conclusion of the 1981 Opinion that an unlicensed person may issue compilation and review reports on financial statements in certain circumstances. However, we modify the conditions stated in that opinion to avoid confusion as to the licensing status of the person issuing the report. Accordingly, in our opinion, a person who performs accounting services but is not licensed by the State Board of Public Accountancy may issue compilation and review reports in accordance with the standards set forth by the AICPA in the relevant SSARS, so long as that person: (1) uses reporting language substantially in accordance with the language recommended by the AICPA and includes a specific statement that he or she is not licensed to perform audits; (2) does not purport to represent that he or she has performed an "audit"; and (3) does not provide an opinion as to the correctness, fairness, or fair presentation of the financial statements.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Matthew A. Lawrence Assistant Attorney General
 Robert N. McDonald Chief Counsel
Opinions Advice
Accountants — Licenses — Public Accountancy Law Permits UnlicensedPersons to Prepare Compilation and Review Reports subject tocertain conditions
[1] At the time, the statute employed the term "certified" to describe accountants permitted to practice certified public accountancy in the State. See Former Article 75A, § 14(a) (1975 Repl. Vol.). The current version of the Act now uses the term "licensed." See Annotated Code of Maryland, Business Occupations Professions Article ("BOP"), § 2-101(c) and § 2-301.
[2] As a result of code revision the Act became part of the Business Occupations Professions Article in 1989.
[3] Similar prohibitions in the statute against the use of the terms "accountant" and "accounting services" had been declared unconstitutional by the Court of Appeals in ComprehensiveAccounting Services v. State Board of Public Accountancy,284 Md. 474, 397 A.2d 1019 (1979).
[4] A 1986 amendment added a definition of "practice certified public accountancy" to the Act. See Part II of this opinion.
[5] See Chapters 29, 776, Laws of Maryland 1982; Chapters 79, 80, 168, 176, 595, Laws of Maryland 1983; Chapters 17, 255, Laws of Maryland 1984; Chapter 717, Laws of Maryland 1985; Chapter 780, Laws of Maryland 1986; Chapter 3, Laws of Maryland 1989; Chapter 6, Laws of Maryland 1990; Chapter 47, Laws of Maryland 1991; Chapters 146, 216, Laws of Maryland 1992; Chapters 459, 639, Laws of Maryland 1993; Chapters 3, 15, 345, Laws of Maryland 1994; Chapter 3, Laws of Maryland 1995; Chapters 35, 107, Laws of Maryland 1996; Chapters 59, 735, Laws of Maryland 1997; Chapter 49, 342, Laws of Maryland 1998; Chapters 438, 525, Laws of Maryland 1999.
[6] The term "examination" was later deleted from this definition in a non-substantive revision based upon the reported view of the AICPA that "audit" and "examination" were synonymous in this context. See Chapter 3, § 1, Laws of Maryland 1989 at p. 30 (Revisor's Note).
[7] In response to a Court of Appeals decision, a 1983 amendment had eliminated the generic term "accountant" from the list of titles that may be used only by licensed accountants.See Chapter 79, Laws of Maryland 1983, and footnote 3 above.
[8] It may be argued that the prohibition in BOP, § 2-603(a) against misrepresentation of a person's licensing status "by description of services, methods or procedures or otherwise" was intended to sweep more broadly than former § 14 and prevent an unlicensed person from issuing compilation or review reports because such reports are defined by the AICPA. However, at the time of the 1986 amendment, it was widely understood that, in accordance with the 1981 Opinion, an unlicensed person could lawfully issue a compilation or review report. Thus, a representation that the person had performed a compilation or review would not by itself assert that the person had performed a service or procedure restricted to licensed accountants. Moreover, as discussed in the next section of this opinion, there is no indication in the legislative history that the 1986 amendment was meant to effect such a change in the law.
[9] By contrast, other states explicitly include the terms "compilation" and "review" in defining the scope of practice of their licensees. For example, the Indiana, Idaho, and Massachusetts laws provide that only a licensee may issue reports on financial statements and specifically include both a "review" and "compilation" within the definition of "report." Ind. Code §§ 25-2.1-12-2 and 25-2.1-12-3; Idaho Code § 54-221; M.G.L.A. 112, § 87D. Maine's public accountancy law states:
 No person or firm not holding a valid permit issued under section 12251 or 12252 may issue a report, including reviews and compilations, on financial statements of any other person, firm, organization or governmental unit.
32 M.R.S.A. § 12755(a) (emphasis added).
[10] The Committee Report stated:
 This initiative was taken because the Business Occupations Article Committee found that — in the context of the formal nonsubstantive revision of the proposed new Business Occupations Article — it was unable to address properly the several substantive problems found to exist in the laws on accountancy. Through the initial efforts to draft a nonsubstantive revision, it became clear that the difficulties are not merely academic. The relevant provisions of the current law have been the cause of considerable uncertainty among the administrators responsible for implementing the law and among the practitioners who are regulated under it. Thus, House Bill 1261 is presented to the General Assembly this session as a substantive proposal separate from the proposed Business Occupations Article that will be introduced in a later session. The separate presentation of this bill allows the General Assembly to consider the issues involved more clearly and carefully.
BOAC Report at p. 1.
[11] That definition, which remains the same after SSARS No. 7, reads:
 Financial Statement. A presentation of financial data, including accompanying notes, derived from accounting records and intended to communicate an entity's economic resources or obligations at a point in time, or the changes therein for a period of time, in accordance with generally accepted accounting principles or a comprehensive basis of accounting other than generally accepted accounting principles. Financial forecasts, projections and similar presentations, and financial presentations included in tax returns are not financial statements for purposes of this statement. . . .
SSARS No. 1, § 100.04 (footnotes omitted).
[12] The preparation of financial statement on the basis of generally accepted accounting principles would not necessarily require a license under the Public Accountancy Act. The Act permits an unlicensed person to provide certain services, including the preparation of financial statements. BOP, § 2-102(a)(3)(iii). The State Board of Public Accountancy has adopted a definition of "financial statement," similar to the definition in SSARS No. 1, that indicates that financial statements are prepared in accordance with GAAP "or another comprehensive basis of accounting." COMAR 09.24.01.01A(2).
[13] See pp. 12-13 below. Indeed, that reporting language is often proffered in court as a disclaimer that precludes reliance on the financial statements by third parties and protects the preparer from liability. See, e.g., City National Bank ofFlorida v. Checkers, Simon Rosner, 32 F.3d 277, 281 n. 1 (7th
Cir. 1994) (district court dismissed fraud and negligence action against accounting firm based in part on "clear and unambiguous disclaimers" in compilation reporting language); Ashland Oil Co.,Inc. v. Arnett, 875 F.2d 1271, 1284-85 (7th Cir. 1989) ("disclaimer" in compilation reporting language does not relieve accountant from duty to refrain from knowing participation in fraud).
[14] A regulation adopted by the State Board of Public Accountancy in 1992 may support such a view. In that regulation, the Board defined "written certificate or opinion as to the correctness of the financial statement or as to the fairness of the presentation" to include "any . . . form of language which expressly disclaims an opinion when that form of language is conventionally understood to imply any positive assurance as to the reliability of the financial statements . . ." COMAR09.24.01.01A(9)(b)(i).
[15] The reporting language recommended for a review report is markedly similar to an example provided in the Restatement 2d of Torts of circumstances in which an accountant would not be held liable for negligent misrepresentation. See Restatement 2d Torts § 522, Comment c, Illustration 3. See also Union Bank v. Ernst Whinney, 278 Cal.Rptr. 490, 495-96 (Cal.Ct.App. 1991) (quoting reporting language and holding that accountant's review report may not be basis for fraud or negligence claim by third party).
[16] If the General Assembly intended to prohibit unlicensed accountants from preparing review reports, it need only have looked to the laws of Virginia for an example of a clear prohibition. Virginia law prohibits an unlicensed accountant from using the term "generally accepted accounting principles" in connection with the preparation of a financial statement, from using the term "review"or "SSARS" with respect to financial statements, and from implying proficiency with financial standards established by the AICPA. See Va. Code Ann. § 54.1-2007(A)(5)-(7). The Virginia statute also explicitly permits unlicensed accountants to prepare compilations. See Va. Code Ann. § 54.1-2001(B)-(C).
[17] The AICPA subsequently modified each of these introductory paragraphs in SSARS No. 7. Those amendments do not affect the conclusion in this opinion. See Part III of this opinion.
[18] In theory, an unlicensed person preparing a compilation or review could avoid such confusion by omitting any reference to the AICPA. However, that solution would ultimately provide a user with less information about the nature of the report.
 *Page 21